# Exhibit 3

**ATTORNEY GENERAL STRANGE LEADS DEAR COLLEAGUE LETTER TO FELLOW ATTORNEYS GENERAL OPPOSING USE OF SUBPOENAS TO ENFORCE THEIR CLIMATE AGENDA VIEWS**

(MONTGOMERY) – Alabama Attorney General Luther Strange led a 13-state Dear Colleague letter urging the nation's Attorneys General to resist using their subpoena powers to target energy industries for their views in the heated climate change debate.

"State Attorneys General should not abuse subpoena power to silence speech or side with one industry against a competitor under investigation," said Attorney General Strange.  "Yet we have seen this very approach used by a group of Attorneys General in an apparent effort to advance a climate change agenda.  This is a chilling abuse of power that must be stopped."

"Several state Attorneys General recently held a press conference under the banner of 'AGs United for Clean Power,'" the multi-state Dear Colleague letter said.  "The media event highlighted an investigation into 'whether fossil fuel companies misled investors and the public on the impact of climate change on their businesses.' We think this effort by our colleagues to police the global warming debate through the power of the subpoena is a grave mistake."

"We are concerned that our colleagues' investigation undermines the trust the people have invested in Attorneys General to investigate fraud.  Investigatory subpoenas were issued to at least one company and one non-profit believed to have made statements minimizing the risks of climate change.  At the press conference, one of our colleagues noted that '[w]e are pursuing this as we would any other fraud matter.'  We routinely investigate fraud and have done so with many of the states present at the press conference.  But this investigation is far from routine.  We are unaware of any fraud case combining the following three characteristics: 1) the investigation targets a particular type of market participant; 2) the Attorneys General identify themselves with the competitors of their investigative targets; and 3) the investigation implicates an ongoing policy debate."

The letter also questioned how one company's minimizing climate change risk is fraud and yet another company's exaggeration of climate change impact is not.

"First, this fraud investigation targets only 'fossil fuel companies' and only statements minimizing climate change risks.  If it is possible to minimize the risks of climate change, then the same goes for exaggeration.  If minimization is fraud, exaggeration is fraud."

Attorney General Strange was joined by fellow Attorneys General from Alaska, Arizona, Arkansas, Louisiana, Michigan, Nebraska, Nevada, Oklahoma, South Carolina, Texas, Utah and Wisconsin in the Dear Colleague letter.

*A copy of the Dear Colleague letter is attached*

--30--

June 15, 2016


Dear Fellow Attorneys General:

Several state Attorneys General recently held a press conference under the banner of "AGs United for Clean Power." The media event highlighted an investigation into "whether fossil fuel companies misled investors and the public on the impact of climate change on their businesses."[1] We think this effort by our colleagues to police the global warming debate through the power of the subpoena is a grave mistake.

We all understand the need for a healthy environment, but we represent a wide range of viewpoints regarding the extent to which man contributes to climate change and the costs and benefits of any proposed fix. Nevertheless, we agree on at least one thing—this is not a question for the courts. Using law enforcement authority to resolve a public policy debate undermines the trust invested in our offices and threatens free speech.

We are concerned that our colleagues' investigation undermines the trust the people have invested in Attorneys General to investigate fraud. Investigatory subpoenas were issued to at least one company and one non-profit believed to have made statements minimizing the risks of climate change.[2] At the press conference, one of our colleagues noted that "[w]e are pursuing this as we would any other fraud matter."[3] We routinely investigate fraud, and have done so with many of the states present at the press conference. But this investigation is far from routine. We are unaware of any fraud case *combining* the following three characteristics: 1) the investigation targets a particular type of market participant; 2) the Attorneys General identify themselves with the competitors of their investigative targets; and 3) the investigation implicates an ongoing public policy debate.

---

[1] Press Release, New York State Attorney General, *A.G. Schneiderman, Former Vice President Al Gore And A Coalition Of Attorneys General From Across The Country Announce Historic State-Based Effort To Combat Climate Change* (March 29, 2016) (available at http://www.ag.ny.gov/press-release/ag-schneiderman-former-vice-president-al-gore-and-coalition-attorneys-general-across).

[2] *See, e.g.*, Attorney General Schneiderman, Press Conference, AGs United For Clean Power (March 29, 2016) (confirming subpoena to ExxonMobil) (video available at http://www.ag.ny.gov/press-release/ag-schneiderman-former-vice-president-al-gore-and-coalition-attorneys-general-across); Subpoena to Competitive Enterprise Institute, *United States Virgin Islands, Office of the Attorney General v. ExxonMobil Oil Corp.*, Case No. 16-002469, Superior Court of the District of Columbia (April 4, 2016).

[3] Attorney General Schneiderman, Press Conference, AGs United For Clean Power, *supra* note 2.

First, this fraud investigation targets only "fossil fuel companies" and only statements minimizing climate change risks.[4]  If it is possible to minimize the risks of climate change, then the same goes for exaggeration.   If minimization is fraud, exaggeration is fraud.  Some have indicated that Exxon Mobil's securities disclosures regarding climate change may be inadequate.[5]  We do not know the accuracy of these charges.  We do know that Exxon Mobil discloses climate change and its possible implications as a business risk.  *See* Exxon Mobil Corporation SEC Form 10-k, FY 2014 (listing "Climate change and greenhouse gas restrictions" as an item 1A risk factor).  If Exxon's disclosure is deficient, what of the failure of renewable energy companies to list climate change as a risk?  *See, e.g.*, SolarCity Corporation SEC Form 10-k, FY 2014 (omitting from item 1A risk factors any mention of climate change or global warming).  If climate change is perceived to be slowing or becoming less of a risk, many "clean energy" companies may become less valuable and some may be altogether worthless.  Therefore, any fraud theory requiring more disclosure of Exxon would surely require more disclosure by "clean energy" companies.

Similarly, it has been asserted that "fossil fuel companies" may have funded non-profits who minimized the risks of climate change.[6]  Does anyone doubt that "clean energy" companies have funded non-profits who exaggerated the risks of climate change?  Under the stated theory for fraud, consumers and investors could suffer harm from misstatements by all energy-market participants and the non-profits they support.  Yet only companies and non-profits allegedly espousing a particular viewpoint have been chosen for investigation.

Second, the Attorneys General have taken the unusual step of aligning themselves with the competitors of their investigative targets.  The press conference was titled, "AGs United for Clean Power," apparently to contrast with the power generated by the investigative targets.[7]  One of our colleagues emphasized that she looked forward to working with those at the press conference to "advocate for a comprehensive portfolio of renewable energy sources."[8]  Furthermore, the media event featured a senior partner of a venture capital firm that invests in renewable energy companies.[9]  If the focus is fraud,

---

[4] *See generally* Press Release, New York State Attorney General, *supra* note 1; Press Conference, AGs United For Clean Power, *supra* note 2.

[5] *See, e.g.*, Attorney General Healey, Press Conference, AGs United For Clean Power, *supra* note 2.

[6] *See, e.g.*, Attorney General Schneiderman, Press Conference, AGs United For Clean Power, *supra* note 2.

[7] *See generally* Press Release, New York State Attorney General, *supra* note 1; Press Conference, AGs United For Clean Power, *supra* note 2.

[8] Press Release, New York State Attorney General, *supra* note 1 (quoting Attorney General Madigan).

[9] *See* Press Release, New York State Attorney General, *supra* note 1 (noting presence of Vice President Gore); Press Conference, AGs United For Clean Power, *supra* note 2 (including remarks by Vice President Gore); Press Release, Kleiner Perkins Caufield & Byers, *Al Gore Joins KPCB as Partner and John Doerr Joins Generation's Advisory Board* (November 12, 2007) (available at

such alignment by law enforcement sends the dangerous signal that companies in certain segments of the energy market need not worry about their misrepresentations. For example, though some of us may have investigated diesel emissions, we have not launched our investigations with other auto companies present or identified ourselves as "AGs United for Diesel Alternatives." Implying a safe harbor for the "Clean Power" energy segment, which some estimate at $200 billion, or approximately the size of the pharmaceutical industry, is a dangerous practice.[10]

Third, this investigation inescapably implicates a public policy debate and raises substantial First Amendment concerns. As our colleagues must know, a vigorous debate exists in this country regarding the risks of climate change and the appropriate response to those risks. Both sides are well-funded and sophisticated public policy participants. Whatever our country's response, it will affect people, communities, and businesses that all have a right to participate in this debate. Actions indicating that one side of the climate change debate should fear prosecution chills speech in violation of a formerly bi-partisan First Amendment consensus. As expressed by Justice Brandeis, it has been a foundational principle that when faced with "danger flowing from speech … the remedy to be applied is more speech, not enforced silence." *Whitney v. California*, 274 U.S. 357, 377 (1927) (Brandeis, J., concurring). Here, the remedy chosen is silence through threat of subpoena. This threat distorts the debate and impoverishes consumers and the general public who may wish to better educate themselves by hearing and evaluating both sides.

Once the government begins policing viewpoints, two solutions exist. The first solution is to police all viewpoints equally. Another group of Attorneys General could use the precedent established by the "AGs United for Clean Power" to investigate fraudulent statements associated with competing interests. The subpoenas currently directed at some market participants could be met with a barrage of subpoenas directed at other market participants. No doubt a reasonable suspicion exists regarding a number of statements relating to the risks of climate change. Even in the press conference, a senior partner at Kleiner Perkins Caufield & Byers ("Kleiner Perkins") identified "man-made global warming pollution" as "the reason" for 2015 temperatures, the spread of Zika, flooding in Louisiana and Arkansas, Super Storm Sandy, and Super Typhoon Haiyan.[11] Some evidence may support these statements. Other evidence may refute them. Do these statements increase the value of clean energy investments offered for sale by Kleiner Perkins? Should these statements justify an investigation into all contributions to environmental non-profits by Kleiner Perkins's partners? Should these questions be

https://www.generationim.com/media/pdf-generation-kpcb-12-11-07.pdf); Kleiner Perkins Caufield & Byers public website, available at http://www.kpcb.com/partner/al-gore (confirming Vice President Gore's present status as a "senior partner").

[10] *See, e.g.*, Informational Report, Environmental Defense Fund, *Climate* (2015), at 2 (noting "U.S. clean energy market grew … to $200 billion," in 2014) (available at https://www.edf.org/sites/default/files/AR2015/EDF_AR2015_climate.pdf).

[11] Vice President Gore, Press Conference, AGs United For Clean Power, *supra* note 2.

settled by our state courts under penalty of RICO charges?  May it never be.  As Justice Jackson noted, our "forefathers did not trust any government to separate the true from the false for us."  *Thomas v. Collins*, 323 U.S. 516, 545 (1945).  We write to urge our colleagues to choose the second, and far superior, solution.  Stop policing viewpoints.

Sincerely,

Luther Strange
Attorney General
State of Alabama

Bill Schuette
Attorney General
State of Michigan

Ken Paxton
Attorney General
State of Texas

Craig Richards
Attorney General
State of Alaska

Doug Peterson
Attorney General
State of Nebraska

Sean Reyes
Attorney General
State of Utah

Mark Brnovich
Attorney General
State of Arizona

Adam Laxalt
Attorney General
State of Nevada

Brad Schimel
Attorney General
State of Wisconsin

Leslie Rutledge
Attorney General
State of Arkansas

Scott Pruitt
Attorney General
State of Oklahoma

Jeff Landry
Attorney General
State of Louisiana

Alan Wilson
Attorney General
State of South Carolina