# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

DISTRICT OF COLUMBIA

       Plaintiff,

  v.

EXXON MOBIL CORP., *et al.*

       Defendants.

Civil Action No. 20-1932 (TKJ)

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF
# DISTRICT OF COLUMBIA'S MOTION TO REMAND TO STATE COURT

## TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................ 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ................................. 3

III.    LEGAL STANDARDS ............................................................................... 4

IV.    REMAND TO STATE COURT IS REQUIRED BECAUSE THERE IS NO SUBJECT-MATTER JURISDICTION. ....................................................... 7

     A.    The District's claims are not removable under *Grable* ...................... 7

         1.      Nothing about this case "necessarily raise[s]" any federal issue. ........................... 8

         2.      Nor does this case raise a "substantial" federal issue. ......................................... 11

         3.      The balance of state and federal responsibility favors remand. ............................ 13

     B.    Federal common law does not confer subject-matter jurisdiction over the District's claims. ................................................................................ 14

         1.      This case has nothing to do with any body of federal common law. ..................... 14

         2.      Federal common law does not provide an independent basis for removal. .......... 17

     C.    There is no enclave jurisdiction because the District's claims do not "arise on" any federal enclave. ................................................................ 18

     D.    The District's Complaint does not fall within the jurisdictional grant of the Outer Continental Shelf Lands Act. ............................................... 22

     E.    There is no federal officer removal jurisdiction because no federal officer directed the Defendants' actions at issue in this case: marketing and sales of fossil fuel products. .......................................................... 25

     F.    The Class Action Fairness Act does not provide a basis for removal because this is not a "class action." .................................................... 29

     G.    Diversity jurisdiction cannot be premised on indirect benefits to D.C. citizens because the Attorney General is the real party in interest. ................................................................................................ 32

V.     CONCLUSION ......................................................................................... 34

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*American Electric Power Co. v. Connecticut*,
  564 U.S. 410 (2011) .......................................................................................................... 15, 16

*Amoco Prod. Co. v. Sea Robin Pipeline Co.*,
  844 F.2d 1202 (5th Cir. 1988) ............................................................................................... 25

*Andrade v. Jackson*,
  401 A.2d 990 (D.C. 1979) ...................................................................................................... 19, 21

*Animal Legal Defense Fund v. Hormel Foods Corp.*,
  249 F. Supp. 3d 53 (D.D.C. 2017) ......................................................................................... 10, 11

*Arizona v. Countrywide Fin. Corp.*,
  No. CV_11-131-PHX-FJM, 2011 WL 995963 (D. Ariz. 2011) .............................................. 30

*Ballard v. District of Columbia*,
  813 F. Supp. 2d 34 (D.D.C. 2011) ......................................................................................... 5

\* *Bd. of Cty. Comm'rs of Boulder Cty. v. Suncor Energy (U.S.A.) Inc.*,
  405 F. Supp. 3d 947 (D. Colo. 2019) ................................................................................... *passim*

*Bd. of Cty. Comm'rs of Boulder Cty. v. Suncor Energy (U.S.A.) Inc.*,
  965 F.3d 792 (10th Cir. 2020) ............................................................................................... 1, 28

*Bender v. Jordan*,
  623 F.3d 1128 (D.C. Cir. 2010) ............................................................................................. 12

*Brooklyn Union Expl. Co. v. Tejas Power Corp.*,
  930 F. Supp. 289 (S.D. Tex. 1996) ........................................................................................ 23

*California v. Univ. Syndications, Inc.*,
  No. C 09-1186 JF (PVT), 2009 WL 1689651 (N.D. Cal. June 16, 2009) .............................. 32

\* *Caterpillar, Inc. v. Williams*,
  482 U.S. 386 (1987) ................................................................................................................ 5, 6

*City of New York* v. *BP p.l.c.*,
  325 F. Supp. 3d 466 (S.D.N.Y. 2018) .................................................................................... 16

\* *City of Oakland v. BP PLC*,
  __ F.3d __, No. 18-16663, 2020 WL 4678380 (9th Cir. Aug. 12, 2020) ........................ *passim*

*Commonwealth v. Chatham Dev. Co.*,
   49 Mass. App. Ct. 525 (2000) ............................................................................. 31

\* *Cty. of San Mateo v. Chevron Corp.*,
   294 F. Supp. 3d 934 (N.D. Cal. 2018) ........................................................... *passim*

*Cty. of San Mateo v. Chevron Corp.*,
   960 F.3d 586 (9th Cir. 2020) .......................................................................... 1, 28

*D.C. Ass'n of Chartered Pub. Sch. v. District of Columbia*,
   930 F.3d 487 (D.C. Cir. 2019) ............................................................................ 7, 8

*Davis v. United States*,
   385 A.2d 757 (D.C. 1978) ...................................................................................... 22

*Dep't of Fair Empl. & Hous. v. Lucent Techs., Inc.*,
   642 F.3d 728 (9th Cir. 2011) ................................................................................. 34

\* *District of Columbia v. 2626 Naylor Road, S.E. Wash., D.C. 20020*,
   763 F. Supp. 2d 5 (D.D.C. 2011) .......................................................................... 32

*EP Operating Ltd. P'ship v, Placid Oil Co.*,
   26 F.3d 563 (5th Cir. 1994) ................................................................................... 23

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
   545 U.S. 546 (2005) .................................................................................................. 4

*Fairfield Indus., Inc. v. EP Energy E&P Co.*,
   No. CV H-12-2665, 2013 WL 12145968 (S.D. Tex. May 2, 2013) ........................ 23

\* *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*,
   463 U.S. 1 (1983) .................................................................................................. *passim*

\* *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
   545 U.S. 308 (2005) ....................................................................................... 2, 6, 7, 8

*Gully v. First Nat'l Bank*,
   299 U.S. 109 (1936) .................................................................................................. 8

*Gunn v. Minton*,
   568 U.S. 251 (2013) ............................................................................................. 7, 11

*Hood ex rel. Miss. v. Microsoft Corp.*,
   428 F. Supp. 2d 537 (S.D. Miss. 2006) ................................................................. 32

*Illinois ex rel. Scott v. Hunt Int'l Res. Corp.*,
  481 F. Supp 71 (N.D. Ill. 1979) .......................................................................... 32

*Illinois v. AU Optronics Corp.*,
  794 F. Supp. 2d 845 (N.D. Ill. 2011) ................................................................... 29

*Illinois v. SDS W. Corp.*,
  640 F. Supp. 2d 1047 (C.D. Ill. 2009) ............................................................ 32, 33

*In re Deepwater Horizon*,
  745 F.3d 157 (5th Cir. 2014) .......................................................................... 23, 24

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
  488 F.3d 112 (2d Cir. 2007) ................................................................................ 28

*In re Oxycontin Antitrust Litig.*,
  821 F. Supp. 2d 591 (S.D.N.Y. 2011) .................................................................. 29

*In re Tobacco/Governmental Health Care Costs Litig.*,
  100 F. Supp. 2d 31 (D.D.C. 2000) ...................................................................... 16

*In re Vioxx Prods. Liab. Litig.*,
  843 F. Supp. 2d 654 (E.D. La. 2012) .................................................................. 29

*Int'l Union of Bricklayers & Allied Craftworkers v. Ins. Co. of the W.*,
  366 F. Supp. 2d 33 (D.D.C. 2005) ..................................................................... 4, 5

*JMM Corp. v. District of Columbia*,
  378 F.3d 1117 (D.C. Cir. 2004) ....................................................................... 5, 13

*Jograj v. Enter. Servs., LLC*,
  270 F. Supp. 3d 10 (D.D.C. 2017) .................................................................. 21, 22

*K&D LLC v. Trump Old Post Office LLC*,
  951 F.3d 503 (D.C. Cir. 2020) ....................................................................... 25, 26

*Kansas ex rel. Stovall v. Home Cable Inc.*,
  35 F. Supp. 2d 783 (D. Kan. 1998) ..................................................................... 32

*Laredo Offshore Constructors, Inc. v. Hunt Oil Co.*,
  754 F.2d 1223 (5th Cir. 1985) ............................................................................ 25

*LG Display Co. v. Madigan*,
  665 F.3d 768 (7th Cir. 2011) .............................................................................. 29

*LLOG Expl. Co. v. Certain Underwriters at Lloyd's of London*,
   No. CIVA 06-11248, 2007 WL 854307 (E.D. La. Mar. 16, 2007) ......................................... 23

*Martin v. Franklin Capital Corp.*,
   546 U.S. 132, 141 (2005) ...................................................................................................... 34

*Maryland v. Louisiana*,
   451 U.S. 725 (1981) ......................................................................................................... 33, 34

\* *Massachusetts v. Exxon Mobil Corp.*,
   __ F. Supp. 3d __, No. CV 19-12430-WGY, 2020 WL 2769681
   (D. Mass. May 28, 2020) ................................................................................................. *passim*

\* *Mayor & City Council of Baltimore v. BP P.L.C.*,
   388 F. Supp. 3d 538 (D. Md. 2019) ................................................................................. *passim*

\* *Mayor & City Council of Baltimore v. BP P.L.C.*,
   952 F.3d 452 (4th Cir. 2020) ................................................................... 1, 6, 27, 28

*McEachin v. United States*,
   432 A.2d 1212 (D.C. 1981) ................................................................................................... 22

*Mesa v. California*,
   489 U.S. 121 (1989) .............................................................................................................. 27

*Metro. Life Ins. Co. v. Taylor*,
   481 U.S. 58 (1987) .................................................................................................................. 6

*Mississippi ex rel. Hood v. AU Optronics Corp.*,
   701 F.3d 796 (5th Cir. 2012) ................................................................................................ 29

*Missouri ex rel. Koster v. Portfolio Recovery Assocs., Inc.*,
   686 F. Supp. 2d 942 (E.D. Mo. Feb. 24, 2020) .................................................................... 29

*Missouri ex rel. Webster v. Best Buy Co.*,
   715 F. Supp. 1455 (E.D. Mo. 1989) ..................................................................................... 32

*Missouri, K. & T. Ry. Co. of Kansas v. Hickman*,
   183 U.S. 53 (1901) ................................................................................................................ 33

\* *Moor v. Alameda Cty.*,
   411 U.S. 693 (1973) .............................................................................................................. 32

*Native Village of Kivalina v. ExxonMobil Corp.*,
   696 F.3d 849 (9th Cir. 2012) ................................................................................................ 15

*Nessel ex rel. Mich. v. Amerigas Partners, L.P.*,
    421 F. Supp. 3d 507 (E.D. Mich. 2019) ................................................................. 29

\* *Nevada v. Bank of Am. Corp.*,
    672 F.3d 661 (9th Cir. 2012) ...................................................... *passim*

*North v. Smarsh, Inc.*,
    160 F. Supp. 3d 63 (D.D.C. 2015) ............................................................ 6

*Palmore v. United States*,
    411 U.S. 389 (1973) ................................................................. 19, 21

*Par. of Plaquemines v. Total Petrochem. & Ref. USA, Inc.*,
    64 F. Supp. 3d 872 (E.D. La. 2014) ........................................................ 23

*Parker Drilling Mgmt. Servs., Ltd. v. Newton*,
    139 S. Ct. 1881 (2019) ..................................................................... 24

*Pennsylvania v. West Virginia*,
    262 U.S. 553 (1923) ........................................................................ 33

*Plains Gas Sols., LLC v. Tenn. Gas Pipeline Co.*,
    46 F. Supp. 3d 701 (S.D. Tex. 2014) ...................................................... 23

*Plaquemines Par. v. Palm Energy Offshore, LLC*,
    No. CIV. A. 13-6709, 2015 WL 3404032 (E.D. La. May 26, 2015) ................................ 23

*Purdue Pharma L.P. v. Kentucky*,
    704 F.3d 208 (2d Cir. 2013) ............................................................. 29, 30

*Okla. ex rel. Edmondson v. BP Am. Inc.*,
    No. CIV-09-945, 2009 WL 10695372 (W.D. Okla. Oct. 29, 2009) ................................. 29

*Kentucky ex rel. Stumbo v. Marathon Petrol. Co.*,
    Civ. A. No. 3:07-CV-00030-KKC, 2007 WL 2900461 (E.D. Ky. Oct. 3, 2007) ..................... 32

*Republic of Venezuela v. Philip Morris Inc.*,
    287 F.3d 192 (D.C. Cir. 2002) ............................................................... 4

\* *Rhode Island v. Chevron Corp.*,
    393 F. Supp. 3d 142 (D.R.I. 2019) ................................................... *passim*

*Rodriguez v. Fed. Deposit Ins. Corp.*,
    140 S. Ct. 713 (2020) ...................................................................... 14

*Rotunda v. Marriott Int'l, Inc.*,
123 A.3d 980 (D.C. 2015) ................................................................................ 30

*S. Carolina v. AU Optronics Corp.*,
No. 3:11-cv-00731-JFA, 2011 WL 4344079 (D.S.C. 2011) ............................ 29

*Shulthis v. McDougal*,
225 U.S. 561 (1912) .......................................................................................... 6

*St. Joe Co. v. Transocean Offshore Deepwater Drilling Inc.*,
774 F. Supp. 2d 596 (D. Del. 2011) ................................................................ 24

*State of N.Y. by Abrams v. Gen. Motors Corp.*,
547 F. Supp. 703 (S.D.N.Y. 1982) .................................................................. 32

*Tenn. Gas Pipeline v. Houston Cas. Ins. Co.*,
87 F.3d 150 (5th Cir. 1996) ............................................................................ 25

*Tex. Indus., Inc. v. Radcliff Materials, Inc.*,
451 U.S. 630 (1981) ........................................................................................ 14

*United Offshore Co. v. S. Deepwater Pipeline Co.*,
899 F.2d 405 (5th Cir. 1990) .......................................................................... 25

*Vaden v. Discover Bank*,
556 U.S. 49 (2009) ............................................................................................ 5

*Virginia v. Supportkids Servs., Inc.*,
No. 3:10-cv-73, 2010 WL 1381420 (E.D. Va. Mar. 30, 2010) ........................ 32

* *W. Va. ex rel. McGraw v. CVS Pharmacy, Inc.*,
646 F.3d 169 (4th Cir. 2011) .............................................................. 13, 29, 31

*Washington v. Cimei Innolux Corp.*,
659 F.3d 842 (9th Cir. 2011) .......................................................................... 29

*Watson v. Philip Morris Cos.*,
551 U.S. 142 (2007) .................................................................................. 25, 28

*West Virginia v. JP Morgan Chase & Co.*,
842 F. Supp. 2d 984 (S.D.W. Va. 2012) ........................................................ 29

*Wisconsin v. Abbott Labs.*,
341 F. Supp. 2d 1057 (W.D. Wis. 2004) ........................................................ 32

## Statutes

13 U.S.C. § 1332(a) ................................................................................................ 32

15 U.S.C. § 57b(e) .................................................................................................. 13

28 U.S.C. § 1331 ..................................................................................................... 18

28 U.S.C. § 1332(d) ..................................................................................... 2, 29, 30

28 U.S.C. § 1442 ........................................................................................ 6, 8, 26, 29

28 U.S.C. § 1443 .................................................................................................. 8, 26

28 U.S.C. § 1447 ........................................................................................ 2, 4, 8, 34

28 U.S.C. § 1453(b) ............................................................................................... 30

43 U.S.C. § 1349 ............................................................................................... 23, 24

D.C. Code § 28-3901 ............................................................................................ 1, 4

D.C. Code § 28-3904 ............................................................................................ 8, 9

D.C. Code § 28-3905(k) ......................................................................................... 30

D.C. Code § 28-3909 ..................................................................................... 9, 30, 31

D.C. Code § 28-3909.01 ........................................................................................... 9

Mass. G.L. c. 93A, § 4 ........................................................................................... 31

## U.S. Constitution

U.S. Const., Art. 1, § 8, cl. 17 ............................................................................... 19

## Rules

Federal Rules of Civil Procedure Rule 23 ................................................... 30, 31, 32

## Other Authorities

District of Columbia Court Reform and Criminal Procedure Act ("Court Reform Act"),
    Pub. L. No. 91-358, 84 Stat. 473 (1970) ........................................................ 20

## I.    INTRODUCTION

The District of Columbia ("District") filed this action against fossil fuel entities ExxonMobil, Shell, Chevron, and BP ("Defendants") to enforce the District's Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3901 *et seq.* The District alleges that Defendants have deceived and misled District consumers in the marketing and sales of their fossil fuel products. The well-pleaded complaint relies exclusively on District law, and this Court lacks subject-matter jurisdiction over it. The District's claims, brought under the laws of the District to protect the people of the District, should be returned to the courts of the District.

This case is indistinguishable from a recent case brought by the Massachusetts Attorney General against defendant ExxonMobil, alleging claims under the Massachusetts Consumer Protection Act. After ExxonMobil's removal, premised on several grounds identical to ones asserted here, the case was remanded to state court for lack of subject-matter jurisdiction. *Massachusetts v. Exxon Mobil Corp.*, __ F. Supp. 3d __, No. CV 19-12430-WGY, 2020 WL 2769681, at *1 (D. Mass. May 28, 2020). Four other district courts and three courts of appeal have also rejected Defendants' same arguments for removal jurisdiction in analogous cases where Defendants were parties.[1] There is nothing different about this case, and it too should be remanded to the Superior Court.

---

[1] *See Mayor & City Council of Baltimore v. BP P.L.C.*, 388 F. Supp. 3d 538 (D. Md. 2019), *as amended* (June 20, 2019) ("*Baltimore I*"), *aff'd in part, appeal dismissed in part*, 952 F.3d 452 (4th Cir. 2020) ("*Baltimore II*"), *petition for cert. filed*, No. 19-1189 (Mar. 31, 2020); *Cty. of San Mateo v. Chevron Corp.*, 294 F. Supp. 3d 934 (N.D. Cal. 2018) ("*San Mateo I*"), *aff'd in part, appeal dismissed in part*, 960 F.3d 586 (9th Cir. 2020), *reh'g en banc denied* (Aug. 4, 2020) ("*San Mateo II*"); *City of Oakland v. BP PLC*, __ F.3d __, No. 18-16663, 2020 WL 4678380 (9th Cir. Aug. 12, 2020), *reh'g en banc denied* (Aug. 12, 2020) ("*Oakland*"); *Bd. of Cty. Comm'rs of Boulder Cty. v. Suncor Energy (U.S.A.) Inc.*, 405 F. Supp. 3d 947 (D. Colo. 2019) ("*Boulder I*"), *aff'd in part, appeal dismissed in part*, 965 F.3d 792 (10th Cir. 2020) ("*Boulder II*"); *Rhode Island v. Chevron Corp.*, 393 F. Supp. 3d 142 (D.R.I. 2019), *appeal docketed*, No. 19-1818 (1st Cir. Aug. 20, 2019).

Facing a sweeping tide of decisions rejecting federal jurisdiction in materially indistinguishable cases, Defendants try to recast this case as one bearing no resemblance to the contents of the Complaint. Their Notice of Removal raises legal questions unrelated to the District's consumer protection claims, imagines remedies far beyond those available or sought here, insinuates lurid political improprieties and wholly irrelevant matters of international diplomacy, and much more. "Yet as it reaches this Court on a motion to remand, this case is about the well-pleaded complaint rule—nothing more and nothing less." *Massachusetts*, 2020 WL 2769681, at *1. The District's actual Complaint and controlling law, including decisions Defendants omitted from their removal notice, foreclose federal jurisdiction. Stripped of its hyperbole and factual misstatements, the Notice of Removal says nothing that courts around the country have not already rejected multiple times over.

Each of Defendants' grounds for removal fails because the claims in the District's Complaint: (1) allege only violations of a single District law; (2) do not require the disposition of any federal issue and therefore do not support jurisdiction under *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005) ("*Grable*"); (3) are not rendered removable by federal common law; (4) involve no action by Defendants taken under the direction of a federal officer, in a federal enclave, or on the Outer Continental Shelf; (5) do not constitute a "class action" under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d); and (6) make clear that the Attorney General is the real party in interest such that diversity jurisdiction is not appropriate. Defendants thus fail to meet their substantial burden of proving that removal is proper. Accordingly, the District respectfully requests that this Court grant its motion to remand, pursuant to 28 U.S.C. § 1447, and properly return this case to Superior Court.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

On June 25, 2020, the District sued Defendants in the Superior Court of the District of Columbia, asserting claims under the CPPA for misrepresentations and omissions Defendants made to District consumers regarding (1) the central role Defendants' products play in causing climate change, (2) Defendants' claims that they are each substantially invested in lower-carbon technologies and renewable energy sources, and (3) Defendants' advertisements of certain fossil fuel products as "green" or "clean." *See* Dkt. 1-14 (Ex. 13), Summons and Complaint ("Compl.") ¶¶ 1–11; 169–96.

Defendants have known for more than half a century that their fossil fuel products create greenhouse gas pollution that warms the oceans, changes our climate, and causes sea levels to rise. Compl. ¶¶ 4, 5, 26–41. They were so certain of this conclusion that they took steps to protect their own assets from rising seas and more extreme storms, and developed new technologies to profit from a warming world. *Id.* ¶¶ 42–47. Despite this knowledge, Defendants funded and carried out a decades-long campaign of denial and disinformation about the existence of climate change and their products' contribution to it. *Id.* ¶¶ 48–88. The campaign included both a long-term pattern of direct misrepresentations and material omissions to consumers in the District, as well as a strategy to influence consumers indirectly by affecting public opinion through the dissemination of misleading research to the press, government, and academia. *Id.* ¶¶ 48–52.

As public awareness has caught up to Defendants' longstanding internal knowledge of their products' contribution to the growing climate crisis, Defendants pivoted to misleading consumers about their supposed level of investment in "cleaner" energy sources and about their products' impacts on the climate. *Id.* ¶ 98. Through these "greenwashing" advertising campaigns, Defendants falsely portray themselves as sustainable, environmentally conscious companies

committed to finding solutions to climate change by investing in renewable energy sources. *Id.* ¶ 99. In reality, Defendants' investments in low-carbon energy are negligible, and Defendants continue to ramp up fossil fuel production globally and invest in new fossil fuel development. *Id.* ¶¶ 100–02. Finally, Defendants have misleadingly advertised certain products, such as their gasoline and motor oil, as "safe," "clean," and "emissions-reducing," implying that the purchase of such products will benefit the climate, while omitting that the very production and use of such products is the leading cause of climate change. *Id.* ¶¶ 147–50.

On July 17, 2020, Defendant Exxon Mobil filed a notice of removal asserting seven grounds for federal court jurisdiction: embedded federal question, federal common law, federal enclave, federal officer, the Outer Continental Shelf Lands Act ("OCSLA"), CAFA, and diversity. *See* Notice of Removal, Dkt. No. 1 ("Not. of Rem."). Contrary to Defendants' assertions, this case does not seek to limit the extraction of fossil fuels or otherwise regulate the release of greenhouse gas emissions. Rather, the Complaint seeks injunctive relief and civil penalties against each Defendant for violations of the CPPA, D.C. Code § 28-3901 *et seq.*, based on Defendants' misrepresentations and omissions, which had the tendency to mislead District consumers. *Id.* ¶¶ 169–96.

## III.    LEGAL STANDARDS

By design, federal courts are "courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) (internal quotation omitted). Accordingly, "[w]hen it appears that a district court lacks subject matter jurisdiction over a case that has been removed from a state court, the district court *must* remand the case." *Republic of Venezuela v. Philip Morris Inc.*, 287 F.3d 192, 196 (D.C. Cir. 2002) (emphasis added) (citing 28 U.S.C. § 1447(c)); *see also Int'l Union of Bricklayers &*

*Allied Craftworkers v. Ins. Co. of the W.*, 366 F. Supp. 2d 33, 36 (D.D.C. 2005) ("[T]he court must resolve any ambiguities concerning the propriety of removal in favor of remand."). "Courts in this circuit have construed removal jurisdiction strictly, favoring remand where the propriety of removal is unclear." *Ballard v. District of Columbia*, 813 F. Supp. 2d 34, 38 (D.D.C. 2011). "The party opposing a motion to remand bears the burden of establishing that subject matter jurisdiction exists in federal court." *Int'l Union of Bricklayers & Allied Craftworkers*, 366 F. Supp. 2d at 36. The bar against removal is even higher where the matter is an action brought by a state exercising its sovereign authority to enforce its own laws. *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 21 n.22 (1983); *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 676 (9th Cir. 2012); *cf. JMM Corp. v. District of Columbia*, 378 F.3d 1117, 1125 (D.C. Cir. 2004) (noting that Congress has made it clear that federal courts should treat the District of Columbia judicial system as if it were a state system).

Under the "well-pleaded complaint" rule, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). The rule "makes the plaintiff the master of the claim," because, in drafting the complaint, the plaintiff may choose to "avoid federal jurisdiction by exclusive reliance on state law." *Id.* It is a "powerful doctrine" that "severely limits the number of cases in which state law 'creates the cause of action' that may be initiated in or removed to federal district court." *Franchise Tax Bd.*, 463 U.S. at 9–10.

A close corollary to the well-pleaded complaint rule is that "[f]ederal jurisdiction cannot be predicated on an actual or anticipated defense," whether anticipated by the plaintiff in the complaint, or asserted by the defendants in the notice of removal. *Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009). For more than a century, it has been "settled law that a case may not be removed

to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Franchise Tax Bd.*, 463 U.S. at 14.

There are only three relevant exceptions to the well-pleaded complaint rule. The first—various called the "federal ingredient," "embedded federal question," "substantial federal question," or *Grable* test—is "extremely rare" and applies only to a "special and small category of cases." *North v. Smarsh, Inc.*, 160 F. Supp. 3d 63, 77 (D.D.C. 2015). The *Grable* test provides that federal-question jurisdiction over state-law claims is "confined . . . to those that 'really and substantially involv[e] a dispute or controversy respecting the validity, construction or effect of [federal] law.'" *Grable*, 545 U.S. at 313 (quoting *Shulthis v. McDougal*, 225 U.S. 561, 569 (1912)). The second, referred to as "complete preemption" or the "artful pleading" doctrine, permits federal-question removal in the rare circumstance where "the pre-emptive force of a [federal] statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim.'" *Caterpillar*, 482 U.S. at 393 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). The third exception, codified at 28 U.S.C. § 1442(a)(1), permits removal by "any officer (or any person acting under that officer) of the United States or of any agency thereof," who has been sued "for or relating to any act under color of such office." To remove a case under § 1442(a)(1), a private defendant must show: "(1) that it act[ed] under a federal officer, (2) that it has a colorable federal defense, and (3) that the charged conduct was carried out for [or] in relation to the asserted official authority." *Baltimore II*, 952 F.3d at 461–62 (quotations omitted). None of these exceptions apply here.

## IV.   REMAND TO STATE COURT IS REQUIRED BECAUSE THERE IS NO SUBJECT-MATTER JURISDICTION.

### A.   The District's claims are not removable under *Grable*.

This case does not satisfy any of the elements required for removal jurisdiction under *Grable*, which extends federal question jurisdiction only to the "slim category" of state-law complaints where a federal issue is: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *D.C. Ass'n of Chartered Pub. Sch. v. District of Columbia*, 930 F.3d 487, 491 (D.C. Cir. 2019) (quoting *Gunn v. Minton*, 568 U.S. 251, 258 (2013)).

No federal issue is "necessarily raised," let alone "actually disputed" in this case. Defendants point to an ominous list of topics that are arguably "federal in character," but not one "is an 'essential element' of a [CPPA] claim, as would be necessary for the claim to support federal-question jurisdiction." *D.C. Ass'n of Chartered Pub. Sch.*, 930 F.3d at 491 (quoting *Grable*, 545 U.S. at 315). Moreover, none of the various federal matters Defendants rely on are "substantial" under *Grable*, because they are not "importan[t] . . . to the federal system as a whole." *Gunn*, 568 U.S. at 260. Finally, the "federal-state balance approved by Congress," *id.* at 258, favors the District's ability to litigate claims under the District's laws in courts of the District. Defendants do not even come close to satisfying *Grable*.

"Every court to consider the question has rejected the oil-industry defendants' arguments for *Grable* jurisdiction." *Massachusetts*, 2020 WL 2769681, at *10. This case does not warrant a different result. Five district courts in four circuits have considered Defendants' *Grable* arguments in state-law tort cases alleging that fossil-fuel-industry defendants misrepresented their products' dangers, and all five granted remand. *See Baltimore I*, 388 F. Supp. 3d at 558–61; *Boulder I*, 405 F. Supp. 3d at 964–68; *San Mateo I*, 294 F. Supp. 3d at 937; *Rhode Island*, 393 F. Supp. 3d at 150–

51; *Massachusetts*, 2020 WL 2769681, at *10.[2] The Ninth Circuit, in vacating the lone denial of

remand based on the relationship between climate-related injuries and federal law, also rejected

*Grable* jurisdiction. *Oakland*, 2020 WL 4678380, at *6–7. Defendants' arguments must be rejected

here, too.

### 1. Nothing about this case "necessarily raise[s]" any federal issue.

Defendants' reliance on *Grable* fails the test's first prong. A federal issue is "necessarily

raised" for subject-matter jurisdiction purposes only when "the plaintiff's right to relief necessarily

depends on resolution of a substantial question of federal law." *Franchise Tax Bd.*, 463 U.S. at 28.

The D.C. Circuit has reiterated that an issue of federal law must be "an 'essential element' of a

[claim under District law] . . . for the claim to support federal-question jurisdiction." *D.C. Ass'n*

*of Chartered Pub. Sch.*, 930 F.3d at 491 (quoting *Grable*, 545 U.S. at 315); *see also Gully v. First*

*Nat'l Bank*, 299 U.S. 109, 112 (1936) ("To bring a case within [§ 1331], a right or immunity

created by the Constitution or laws of the United States must be an element, and an essential one,

of the plaintiff's cause of action."); *Oakland*, 2020 WL 4678380, at *5.

Here, the District brings a single cause of action under the CPPA against each Defendant

entity. *See* Compl. ¶¶ 169–96. The District alleges that Defendants "violated D.C. Code § 28-3904

by engaging in a number of deceptive acts and practices in its marketing, promotion, and sale of

fossil fuel products." *Id.* ¶¶ 174, 181, 188, 195. The consumer rights the District seeks to vindicate

---

[2] The Fourth, Ninth, and Tenth Circuits affirmed the remand orders in *Baltimore I*, *San Mateo I*,
and *Boulder I*, respectively, but did not reach the *Grable* issue. Each court held that its appellate
jurisdiction was limited to reviewing whether Defendants' removal on federal officer grounds was
proper. *See* 28 U.S.C. § 1447(d) ("An order remanding a case to the State court from which it was
removed is not reviewable on appeal or otherwise, except that an order remanding a case to the
State court from which it was removed pursuant to section 1442 or 1443 of this title shall be
reviewable by appeal or otherwise."). Each court also affirmed remand based on the lack of federal
officer jurisdiction. *See* Part IV.E, *infra*. The Ninth Circuit reached the issue and rejected *Grable*
jurisdiction in *Oakland*. 2020 WL 4678380, at *6–7.

stem entirely from the CPPA; the statute does not require the District to show Defendants violated any federal standard or satisfy any other question of federal law. *See* D.C. Code § 28-3904(e) & (f) (defining "unfair or deceptive trade practice[s]" to include "misrepresent[ations] as to a material fact which has a tendency to mislead" and "fail[ure] to state a material fact if such failure tends to mislead"); *id.* §§ 28-3909 & 28-3909.01 (vesting right of action in Attorney General and defining available remedies).

Defendants "have not pointed to a specific issue of federal law that must necessarily be resolved to adjudicate the [CPPA] claims." *San Mateo I*, 294 F. Supp. 3d at 938. Instead, Defendants dedicate seven pages to a welter of irrelevant topics, untethered to the Complaint, concerning Congress's and the EPA's "weigh[ing] the costs and benefits of fossil fuels," Not. of Rem. ¶¶ 24–26; various Presidents' foreign policy of "balanc[ing] environmental policy with economic development," *id.* ¶¶ 27–34; whether Defendants defrauded the federal government, *id.* ¶ 35; whether the Army Corps of Engineers "has exercised its authority over navigable waters reasonably over the past several decades," *id.* ¶ 36; and an assertion that "federal common law *exclusively* governs" the District's claims, *id.* ¶ 37 (emphasis in original). Defendants make no attempt to show that federal law requires the District to prove or disprove any of these points to prevail on its CPPA claims, and federal law does not so require.

In a case virtually indistinguishable from this one, the District of Massachusetts remanded a consumer protection action brought by that state's Attorney General, rejecting *Grable* jurisdiction based on two of the issues Defendants raise here. There, Massachusetts brought "four causes of action against ExxonMobil under the Massachusetts Consumer Protection Act, two for defrauding investors and two for defrauding consumers" about the climate harms threatened by ExxonMobil's fossil fuel products. *Massachusetts*, 2020 WL 2769681, at *4. Just like here,

ExxonMobil argued that *Grable* jurisdiction was proper because the state's complaint supposedly "touche[d] on foreign relations" and "would require a factfinder to question the careful balance Congress and federal agencies have struck between greenhouse gas regulation and the nation's energy needs." *Id.* at *9. The court found those concerns irrelevant:

> The Court need not reach the question whether ExxonMobil's two asserted "federal issues" would conjure *Grable* jurisdiction because those issues are simply absent in this case. Contrary to ExxonMobil's caricature of the complaint, the Commonwealth's allegations do not require any forays into foreign relations or national energy policy. It alleges only corporate fraud. ***Whether ExxonMobil was honest or deceitful in its marketing campaigns and financial disclosures does not necessarily raise any federal issue whatsoever***. . . . Massachusetts relies exclusively on mundane theories of fraud against consumers and investors, without seeking to hold ExxonMobil liable for any actual impacts of global warming.

*Id.* at *10 (emphasis added). The District's claims similarly "do not require any forays into foreign relations or national energy policy" to determine whether Defendants violated the CPPA.[3]

This Court's decision in the analogous case of *Animal Legal Defense Fund v. Hormel Foods Corp.*, 249 F. Supp. 3d 53 (D.D.C. 2017) ("*Hormel Foods*"), further illustrates why remand is appropriate. There, the plaintiff alleged that the defendant misled consumers by suggesting that its meat products were "natural." *Hormel Foods*, 249 F. Supp. 3d at 55. The defendant removed, arguing in relevant part that because a "comprehensive national regulatory system governs nearly every aspect of meat and poultry production, including . . . [the] use of 'natural' and 'no preservative' claims" and product labeling, the case necessarily raised federal issues. *Id.* at 57. The court rejected *Grable* jurisdiction, holding that "despite Defendant's rather extreme statement that

---

[3] Defendants cursorily assert three additional federal issues that ExxonMobil did not raise in *Massachusetts*, concerning disclosure obligations to federal regulators, the navigable waters of the United States, and allegedly "govern[ing]" federal common law. *See* Not. of Rem. ¶¶ 35–37. No element of the District's CPPA claims requires proof on those topics, any more than they do foreign affairs or regulatory balancing. All these arguments have been squarely rejected in the courts where Defendants have raised them. *See Oakland*, 2020 WL 4678380, at *6–7; *Rhode Island*, 393 F. Supp. 3d at 151; *San Mateo I*, 294 F. Supp. 3d at 938; *Baltimore I*, 388 F. Supp. 3d at 559–61; *Boulder I*, 405 F. Supp. 3d at 965–67.

Plaintiff's claims are an 'attempt to subvert the federal system of regulation,' . . . it is not at all clear that there is any real conflict between the false advertising claims in this case and the federal laws Defendant cites." *Id.* Specifically, the defendant cited "certain federal laws and regulations related to meat *labelling* and *packaging*," but the plaintiff alleged that the defendant violated the CPPA through "a national *advertising* campaign including, among other things, magazine advertisements, newspaper inserts and webpages," which did not require analysis or proof based on any federal law standard. *Id.* The court thus granted remand. *Id.* at 65–66.

As in *Hormel Foods*, Defendants' allusions to topics ranging from President Eisenhower's foreign policy decisions to the Army Corps of Engineers' management of coastal construction, Not. of Rem. ¶¶ 28, 36, have nothing to do with whether the Defendants made misleading statements or omissions to consumers under the CPPA; they certainly do not show that a federal question is "necessarily raised." And, just as in *Hormel Foods*, Defendants' "rather extreme statement that Plaintiff's claims are an 'attempt to subvert the federal system of regulation,'" 249 F. Supp. 3d at 55—specifically "an attempt to circumvent federal control of environmental policy under the Clean Air Act and EPA actions that directly regulate greenhouse gas emissions," Not. of Rem. ¶ 22—is off-point and does not satisfy *Grable*.

### 2.    Nor does this case raise a "substantial" federal issue.

Even if Defendants could show a federal question is necessarily raised, none could be considered "substantial" under *Grable*. The substantiality inquiry looks to the importance of a federal law issue "to the federal system as a whole." *Gunn*, 568 U.S. at 260. "An issue has such importance when it raises substantial questions as to the interpretation or validity of a federal statute . . . or when it challenges the functioning of a federal agency or program." *Oakland*, 2020 WL 4678380, at *5. A question may also be "substantial" when it presents "a 'pure issue of law,'

11

. . . that directly draws into question 'the constitutional validity of an act of Congress,' . . . or challenges the actions of a federal agency, . . . and a ruling on the issue is 'both dispositive of the case and would be controlling in numerous other cases.'" *Id.* (citations omitted). "By contrast, a federal issue is not substantial if it is 'fact-bound and situation-specific,' . . . or raises only a hypothetical question unlikely to affect interpretations of federal law in the future . . . ." *Id.* (citation omitted); *see also Bender v. Jordan*, 623 F.3d 1128, 1130 (D.C. Cir. 2010) (same).

The District's CPPA claims challenge no federal statute or agency program, nor do they turn on a "dispositive," "pure" issue of federal law that "would be controlling" in other cases; instead they raise only District law issues that are highly "fact-bound and situation-specific," and any connection to future questions of federal law is utterly "hypothetical." *See Oakland*, 2020 WL 4678380, at *7 (whether fossil fuel companies can be held liable under California nuisance law "is no doubt an important policy question, but it does not raise a substantial question of federal law"); *Boulder I*, 405 F. Supp. 3d at 968 (no substantiality where "the issues raised by Defendants are not central to Plaintiffs' claims, and the claims are rife with legal and factual issues that are not related to the federal issues" (quotations omitted)). Although Defendants argue that this case purportedly "sits at the intersection of federal energy and environmental regulations, which implicate foreign policy and national security considerations," Not. of Rem. ¶ 38, those assertions are false for the reasons already stated: the District's consumer deception claims have nothing to do with energy regulations, foreign policy, or national security. Regardless, Defendants have not tied these assertions to any particular question of federal law, far less one that is substantial. It is Defendants' burden to show that a substantial federal issue is at stake, and they have failed to do so.

12

### 3.    *The balance of state and federal responsibility favors remand.*

The balance of state and federal responsibility strongly favors adjudication of the District's claims in Superior Court. "[C]onsiderations of comity make [courts] reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it." *Franchise Tax Bd.*, 463 U.S. at 21 n.22. Indeed, when a government brings an "action in state court to enforce its own state consumer protection laws," and "alleges only state law causes of action, brought to protect [its own] residents, . . . the 'claim of sovereign protection from removal arises in its most powerful form.'" *Nevada*, 672 F.3d at 676 (quoting *W. Va. ex rel. McGraw v. CVS Pharmacy, Inc.*, 646 F.3d 169, 178 (4th Cir. 2011)) (finding no jurisdiction under *Grable* and reversing denial of motion to remand); *see also JMM Corp.*, 378 F.3d at 1125 (holding that federal courts should "generally [ ] treat the District of Columbia judicial system as if it were a state system," including with respect to questions of comity).

That is clearly the case here; the District seeks to enforce its own law in its own courts to protect its own residents. Moreover, permitting removal here would upset the balance between state and federal roles in the consumer protection arena, since Congress has clearly expressed its intent in the Federal Trade Commission Act that the states have an equal role in enforcement of their own consumer protection laws. 15 U.S.C. § 57b(e) ("Remedies provided in this section are in addition to, and not in lieu of, any other remedy or right of action provided by State or Federal law.").

Because Defendants have failed to carry their burden of establishing any substantial federal issue necessary to the adjudication of the District's CPPA claims, *Grable* provides no basis for removal jurisdiction.

**B.** **Federal common law does not confer subject-matter jurisdiction over the District's claims.**

Federal common law provides no basis for removal jurisdiction here. Defendants' argument to the contrary weaves together two incorrect premises to reach an incorrect conclusion. First, and most fundamentally, as in the *Massachusetts* case, the various areas of federal concern Defendants identify have nothing to do with the District's consumer protection complaint. *See* 2020 WL 2769681, at *9. Second, Defendants' assertion that the District's CPPA claims are "governed by federal common law," *e.g.*, Not. of Rem. ¶ 51, is just another way of saying federal common law *preempts* the District's causes of action. And it is beyond dispute that ordinary preemption by operation of the Supremacy Clause does not create subject-matter jurisdiction over state-law causes of action. *See Franchise Tax Bd.*, 463 U.S. at 14.

**1.** *This case has nothing to do with any body of federal common law.*

"[O]nly limited areas exist in which federal judges may appropriately craft the rule of decision," which historically "have included admiralty disputes and certain controversies between States." *Rodriguez v. Fed. Deposit Ins. Corp.*, 140 S. Ct. 713, 717 (2020). Addressing consumer fraud—a task that "no one doubts . . . falls within the core of a state's responsibility," *Massachusetts*, 2020 WL 2769681, at *9—is outside any of these limited areas. Moreover, "before federal judges may claim a new area for common lawmaking, strict conditions must be satisfied," with "one of the most basic" being that "[i]n the absence of congressional authorization, common lawmaking must be 'necessary to protect uniquely federal interests.'" *Rodriguez*, 140 S. Ct. at 717 (quoting *Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640 (1981)). There is neither congressional authorization nor any "uniquely federal interests" at stake in this action to enforce the District's consumer protection law. Federal common law simply does not apply here.

The District's complaint cannot be removed based on a conjured relationship with federal common law because this case has nothing to do with "transboundary pollution," Not. of Rem. ¶¶ 43–51, "interstate or navigable waters of the United States," *id.* ¶¶ 52–53, "foreign commerce and the foreign affairs of the United States," *id.* ¶¶ 54–55, or any other purported "uniquely federal interest." The court in *Massachusetts* rejected identical arguments because a state consumer protection action simply does not implicate any uniquely federal interests. *See* 2020 WL 2769681, at *9. The same analysis and result apply here. The District's CPPA claims seek "to deter Defendants from continuing to engage in" "misrepresentations and omissions of information material to DC consumers' decisions to purchase Defendants' fossil fuel products." Compl. ¶ 3. The Complaint does not ask the courts to solve or remedy the broad swath of environmental problems stemming from climate change that Defendants point to. The Complaint refers to various harms that will result from the climate crisis not because they are the target of the District's relief, but to illustrate one reason why Defendants' misrepresentations and omissions were and are material to consumers. There is no basis to presume that Congress intended to subsume the District's statutory consumer protection claims into judge-made federal law concerning interstate pollution, federal waterways, or foreign policy. And Defendants cite no authority supporting this presumption.

Any federal common law of "transboundary air pollution" is irrelevant to the District's claims concerning false and deceptive representations to D.C. consumers. The CPPA plainly provides the rule of decision here, and Defendants offer no coherent explanation in support of their assertion that the CPPA claims here "plainly constitute the type of transboundary pollution suit that has historically been governed by federal common law." Not. of Rem. ¶ 50. Moreover, Defendants' reliance on *American Electric Power Co. v. Connecticut*, 564 U.S. 410 (2011)

("*AEP*"), and *Native Village of Kivalina v. ExxonMobil Corp.*, 696 F.3d 849 (9th Cir. 2012), both misrepresents those cases (which were filed in federal court under federal common law theories and involve no questions of removal jurisdiction) and ignores subsequent on-point case law that forecloses their arguments here. The Supreme Court squarely held in *AEP* that the Clean Air Act displaced any federal common law claims to abate greenhouse gas emissions, 564 U.S. at 424; whatever federal common law may have existed predating the Clean Air Act has been extinguished and cannot provide a basis for removal.[4] *See San Mateo I*, 294 F. Supp. 3d at 937.[5]

As to foreign relations, this Court rejected virtually identical arguments by tobacco companies two decades ago in *In re Tobacco/Governmental Health Care Costs Litigation*, 100 F. Supp. 2d 31 (D.D.C. 2000). There, the Republic of Bolivia and the Republic of Venezuela

---

[4] Defendants misstate the Supreme Court's unanimous holding in asserting that *AEP* "rejected the notion that state law could govern public-nuisance claims related to global climate change." Not. of Rem. ¶ 47. The court in *San Mateo I* succinctly disposed of Defendants' misleading gloss:

> Far from holding (as the defendants bravely assert) that state law claims relating to global warming are superseded by federal common law, the Supreme Court noted that the question of whether such state law claims survived would depend on whether they are preempted by the federal statute that had displaced federal common law (a question the Court did not resolve). . . . This seems to reflect the Court's view that once federal common law is displaced by a federal statute, there is no longer a possibility that state law claims could be superseded by the previously-operative federal common law.

294 F. Supp. 3d at 937; *see also AEP*, 564 U.S. at 429 ("In light of our holding that the Clean Air Act displaces federal common law, the availability *vel non* of a state lawsuit depends, inter alia, on the preemptive effect of the federal Act. . . . None of the parties have briefed preemption or otherwise addressed the availability of a claim under state nuisance law. We therefore leave the matter open for consideration on remand.").

[5] Defendants' citation to *City of New York* v. *BP p.l.c.*, 325 F. Supp. 3d 466 (S.D.N.Y. 2018), *appeal pending*, No. 18-2188 (2d Cir. argued Nov. 22, 2019), is inapposite for multiple reasons. That case was filed in federal district court in the first instance, and the cited opinion resolved a motion to dismiss for failure to state a claim, not any issue of removal or subject-matter jurisdiction. Moreover, the City of New York brought "three causes of action against" fossil fuel company defendants for "(1) public nuisance, (2) private nuisance, and (3) trespass." *Id.* at 470. Even assuming *arguendo* that those causes of action are indeed "governed by" federal common law, the decision has has no relevance to whether the District's statutory consumer protection claims arise under federal law.

sued a group of tobacco companies in Texas and Florida state courts under state law, alleging that their governments paid increased health care costs as a result of the tobacco industry's misrepresentations regarding the health impacts of tobacco. *Id.* at 34. The tobacco companies removed, asserting in relevant part that the nations' claims "present a federal question on their face under the federal common law of foreign relations" because they implicated various sovereign concerns and decisions of Bolivia, Venezuela, and the United States. *Id.* at 35. After a thorough discussion of the relevant case law, the court rejected that argument and remanded the case, *id.* at 41, reasoning that "[t]here are no even arguably federal claims set forth in the complaint," and that the forum states where the tortious conduct alleged occurred (Texas and Florida) "possess their own strong domestic interests in adjudicating this lawsuit," *id.* at 37. Likewise, federal common law provides no basis for removal here because the District's claims for deception of District consumers have nothing to do with foreign policy and arise entirely from District law.

### 2. *Federal common law does not provide an independent basis for removal.*

Ignoring the well-pleaded complaint rule, Defendants do not specify how federal common law would convert the District's CPPA causes of action into federal ones, stating only *ipse dixit* that federal common law "governs." Not. of Rem. ¶¶ 42, 47, 52. This statement amounts to an unsupported claim of preemption. But ordinary federal preemption cannot create subject-matter jurisdiction, and four district courts have rejected identical arguments in cases involving climate change grounded in state tort and consumer protection law for that reason. *See Massachusetts*, 2020 WL 2769681, at *7 ("categorical error" to "extend[] the complete preemption doctrine beyond statutory terra firma to ethereal federal common law"); *Baltimore I*, 388 F. Supp. 3d at 555 ("Defendants' assertion that the City's public nuisance claim under Maryland law is in fact 'governed by federal common law' is a cleverly veiled preemption argument."); *Boulder I*, 405 F.

Supp. 3d at 963 ("Defendants' argument that Plaintiffs' state law claims are governed by federal common law appears to be a matter of ordinary preemption which . . . would not provide a basis for federal jurisdiction."); *Rhode Island*, 393 F. Supp. 3d at 149 (D.R.I. 2019) ("[E]nvironmental federal common law does not—absent congressional say-so—completely preempt the State's public-nuisance claim, and therefore provides no basis for removal.").

In *Oakland*, the Ninth Circuit rejected an identical argument. 2020 WL 4678380, at *3. Defendants' assertion that the court "reversed on other grounds," Not. of Rem. ¶ 49 n.10, is deliberately misleading. The Ninth Circuit rejected the district court's conclusion "that it had federal-question jurisdiction under 28 U.S.C. § 1331 because the [plaintiff] Cities' claim was 'necessarily governed by federal common law,'" holding that "because neither exception to the well-pleaded-complaint rule [*Grable* and complete preemption] applies to the Cities' original complaints, the district court erred in holding that it had jurisdiction." *Oakland*, 2020 WL 4678380, at *3, *8. The Ninth Circuit did not analyze the plaintiffs' complaints under a third exception for state-law claims "governed by" federal common law because there is no such exception. *See also Boulder I*, 405 F. Supp. 3d at 963 (noting that, as in this case, fossil fuel defendants "fail[ed] to cite any Supreme Court or other controlling authority authorizing removal based on state law claims implicating federal common law").

### C.    There is no enclave jurisdiction because the District's claims do not "arise on" any federal enclave.

Continuing their sleight-of-hand to convince the Court that the District's consumer protection case really seeks to impose liability for Defendants' extraction and production of fossil fuel products, Defendants audaciously assert that this case "arises out of federal enclaves," Not. of Rem. ¶ 56–61, through sources as varied as unidentified "oil and gas operations . . . on military bases and other federal enclaves," *id.* ¶ 58; "climate change injuries . . . suffered in federal

18

enclaves within the District of Columbia," *id.* ¶ 59; and Army Air Force Exchange Service Express stations located at military bases in the District where, "upon information and belief," unidentified products of Defendants were marketed and sold, *id.* ¶ 60. These assertions are found nowhere in the Complaint and fail to meet Defendants' burden to show that this CPPA case "arises on" any federal enclave. *See Baltimore I*, 388 F. Supp. 3d at 564–65 (collecting cases).

Federal enclave jurisdiction arises from Article I, Section 8, Clause 17 of the U.S. Constitution, which provides:

> The Congress shall have Power . . . To exercise exclusive Legislation in all Cases whatsoever, over [the District of Columbia] . . ., and to exercise like Authority over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings.

U.S. CONST. art. I, § 8, cl. 17. "Courts have held that federal question jurisdiction exists over claims that arise on federal enclaves. The general reasoning of these courts is that any claim that arises on a federal enclave is necessarily a creature of federal law because, quite simply, there is no other law." *Baltimore I*, 388 F. Supp. 3d at 564 (citations omitted); *see also id.* at 565 ("As the dearth of case law illustrates, courts have only relied on this 'federal enclave' theory to exercise federal question jurisdiction in limited circumstances.").

In 1970, Congress passed the District of Columbia Court Reform and Criminal Procedure Act ("Court Reform Act"), Pub. L. No. 91-358, 84 Stat. 473 (1970). The Act was intended to "confine the work of [the District's federal courts] . . . to try[ing] cases arising under the Constitution and the nationally applicable laws of Congress" and confer on local courts the "responsibility for trying and deciding those distinctively local controversies that arise under local law." *Palmore v. United States*, 411 U.S. 389, 408–09 (1973); *Andrade v. Jackson*, 401 A.2d 990, 992 (D.C. 1979) ("[I]n establishing this unified local court system, Congress divested the federal courts of jurisdiction over local matters, restricting those courts to those matters generally viewed

19

as federal business . . . ."). Because the CPPA is a "local law" and this case concerns a local matter, this case is properly heard in Superior Court. *See Palmore*, 411 U.S. at 408–09; *Andrade*, 401 A.2d at 992.

Defendants' assertions to the contrary are bald mischaracterizations of the Complaint. Defendants first argue that this action "target[s] Defendants' oil and gas operations" nationwide and thereby "sweeps in those activities that occur on military bases and other federal enclaves." Not. of Rem. ¶ 58. However, the Complaint clearly alleges that the District seeks redress under a District statute for misrepresentations and omissions made to District consumers regarding goods and services that are or would be purchased, leased, or received in the District. Compl. ¶¶ 3, 169–96. The Court should reject Defendants' attempted end-run around the well-pleaded complaint rule.

Similarly, Defendants contort the Complaint to argue that the District's allegations regarding "climate change injuries [that] will be suffered in federal enclaves within the District" generate federal jurisdiction in this case. Not. of Rem. ¶ 59. In reality, the 198-paragraph Complaint contains, at best, three references to the effects of climate change in the District, which are part of a more general section that summarizes how Defendants presciently anticipated the effects of climate change and why Defendants' misrepresentations and omissions are material to D.C. consumers. *See* Compl. ¶¶ 89–97. Put simply, the Complaint seeks relief for the misrepresentations and omissions Defendants made to District consumers—not injuries to land.

Finally, Defendants argue that federal enclave jurisdiction applies because "[f]ossil fuel products, including upon information and belief Defendants' products, were marketed and sold to consumers by the Army Air Force Exchange Service . . . at Express stations located on federal enclaves in the District of Columbia." Not. of Rem. ¶ 60. Again, these assertions are not supported

by the Complaint, and Defendants' vague statements that some kind of products were marketed and sold at military facilities within the District without a single citation to the Complaint do not meet their burden to identify that the case "arose" on an enclave. *See, e.g.*, *Baltimore I*, 388 F. Supp. 3d at 565. Moreover, even if Defendants' factual assertions could be credited by this Court— which they cannot under the well-pleaded complaint rule—the Court Reform Act "divested the federal courts of jurisdiction over local matters," and this local case is properly heard in Superior Court. *Andrade*, 401 A.2d at 992; *see also Palmore*, 411 U.S. at 408–09.

Every court that has considered federal enclave jurisdiction in the analogous state law climate damages cases has rejected it.[6] The result is no different here. If anything, there is a stronger basis to remand here than in those cases alleging nuisance or trespass torts from climate change, because injuries to land are not part of this consumer protection case. The District's CPPA claims—brought by the District, under the District code, on behalf of District consumers, regarding violations occurring in the District—are quintessentially local matters properly heard in Superior Court.

The lone District case upon which Defendants rely to support their enclave gambit is inapposite. *See* Not. of Rem. ¶ 56 (citing *Jograj v. Enter. Servs., LLC*, 270 F. Supp. 3d 10, 16

---

[6] *See Rhode Island*, 393 F. Supp. 3d at 152 (although federal enclaves "exist[] in Rhode Island, and elsewhere may have been the site of Defendants' activities, the State's claims did not arise there" and therefore "[t]here is no federal-enclave jurisdiction"); *Baltimore I*, 388 F. Supp. 3d at 565 ("[I]t cannot be said that federal enclaves were the 'locus' in which the City's claims arose merely because one of the twenty-six defendants, and the predecessor of another defendant, conducted some operations on federal enclaves for some unspecified period of time."); *San Mateo I*, 294 F. Supp. 3d at 939 ("[F]ederal land was not the locus in which the claim arose." (quotation omitted)); *Boulder I*, 405 F. Supp. 3d at 974 ("Federal enclave jurisdiction thus does not exist here because Plaintiffs' claims and injuries are alleged to have arisen exclusively on non-federal land. That the alleged climate alteration by Defendants may have caused similar injuries to federal property does not speak to the nature of Plaintiffs' alleged injuries for which they seek compensation, and does not provide a basis for removal.").

(D.D.C. 2017)). In *Jograj*, a plaintiff brought state tort claims against defendants who hired an individual who entered the District's Navy Yard and opened fire, killing and wounding several people. 270 F. Supp. 3d at 14. The court found that it had federal question jurisdiction because the site of the tort "is the Navy's oldest shore establishment," and "houses the Navy Sea Systems Command," and therefore "the tort claims in [the plaintiff's] Complaint arise from activities in a federal enclave." *Id*. at 17.

Here, by contrast, the District's claims arise from Defendants' misleading advertising and promotion activities throughout the District over a sustained period of time, with no link to any federal property. The allegations in the Complaint bear no resemblance whatsoever to *Jograj*, where all of the relevant conduct occurred at the Navy Yard. Moreover, even if U.S. military installations within the District are in some remote way implicated in Defendants' widespread disinformation campaign, that fact would not, under the Court Reform Act, divest the Superior Court of jurisdiction to hear this case. *See McEachin v. United States*, 432 A.2d 1212, 1216 (D.C. 1981) (Superior Court had jurisdiction over criminal enforcement involving Bolling Air Force Base); *Davis v. United States*, 385 A.2d 757, 759–60 (D.C. 1978) (fact that criminal offense occurred in building owned by the United States did not deprive Superior Court of jurisdiction). Thus, even if Defendants' mischaracterizations of this case were true—which they are not—they would not provide a basis for removal.

### D. The District's Complaint does not fall within the jurisdictional grant of the Outer Continental Shelf Lands Act.

This consumer protection case for deceptive marketing to D.C. consumers is not subject to federal jurisdiction pursuant to the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1349(b)(1). *See* Not. of Rem. ¶¶ 98–107. OCSLA jurisdiction covers disputes involving physical injuries on the Outer Continental Shelf ("OCS") or where the dispute actually and directly involves

OCS drilling and exploration activities, such as contract disputes involving OCS contractors. Again, the method and location of Defendants' production of fossil fuel products is immaterial to the District's consumer protection claims, and Defendants' arguments would "open the floodgates to cases that could invoke OCSLA jurisdiction far beyond its intended purpose." *Plaquemines Par. v. Palm Energy Offshore, LLC*, No. CIV. A. 13-6709, 2015 WL 3404032, at *5 (E.D. La. May 26, 2015). That is not the effect or intent of the OCSLA, and Congress did not intend such "absurd results." *Plains Gas Sols., LLC v. Tenn. Gas Pipeline Co.*, 46 F. Supp. 3d 701, 704–05 (S.D. Tex. 2014) (remanding case alleging unlawful assignment of gas processing contract and unlawful closure of onshore pipeline valve, because activities that caused injury were not conducted on the OCS).

> The Fifth Circuit summarized the test for OCSLA jurisdiction as follows:
>
> Courts typically assess jurisdiction under [§ 1349] in terms of whether (1) the activities that caused the injury constituted an 'operation' 'conducted on the outer Continental Shelf' that involved the exploration and production of minerals, and (2) the case 'arises out of, or in connection with' the operation.

*In re Deepwater Horizon*, 745 F.3d 157, 163 (5th Cir. 2014). "[T]he term 'operation' contemplate[s] the doing of some physical act on the [OCS]." *EP Operating Ltd. P'ship*, 26 F.3d at 567. As illustrated in the margins, courts routinely refuse to exercise jurisdiction over cases tangentially related to mineral exploration and production on the OCS, where granting relief would have no effect on those operations, such as here.[7]

---

[7] *See, e.g.*, *Parish of Plaquemines v. Total Petrochem. & Refining USA, Inc.*, 64 F. Supp. 3d 872, 895 (E.D. La. 2014) (no OCSLA jurisdiction where injurious conduct occurred in state waters, even though it "involved pipelines that ultimately stretch to the OCS"); *Fairfield Indus., Inc. v. EP Energy E&P Co.*, No. CV H-12-2665, 2013 WL 12145968, at *5 (S.D. Tex. May 2, 2013), *report and recommendation adopted*, 2013 WL 12147780 (S.D. Tex. July 2, 2013) (no OCSLA jurisdiction over dispute regarding licensing agreement for seismic data for Gulf of Mexico seabed, where "performance of the disputed contracts would not influence activity on the OCS, nor require either party to perform physical acts on the OCS"); *LLOG Expl. Co. v. Certain Underwriters at*

Given OCSLA's limited jurisdiction, every court to consider fossil fuel defendants' argument in the related climate cases has rejected it.[8] Likewise, the District's injuries here were not caused by, do not arise from, and do not interfere with physical "operations" on the OCS, as that term is used in the OCSLA. Rather, the District's injuries arise from the misrepresentations and omissions Defendants made to consumers within the District regarding Defendants' products—no matter where or by what operations some products' constituent elements were originally extracted. *See, e.g.*, Compl. ¶ 3.

Defendants' cases finding OCSLA jurisdiction are inapposite and, unsurprisingly, none involve state consumer protection laws. Instead, in all of them, the injuries complained of were caused by physical activity on the OCS related to oil and natural gas extraction or were contract disputes directly concerning those activities. *See Deepwater Horizon*, 745 F.3d at 162–64

---

*Lloyd's of London*, No. CIVA 06-11248, 2007 WL 854307, at *5 (E.D. La. Mar. 16, 2007) (no OCSLA jurisdiction over insurance dispute "regarding damages to production facilities that have already occurred" because suit "does not affect or alter the progress of production activities on the OCS, nor does it threaten to impair the total recovery of federally owned minerals from the OCS"); *Brooklyn Union Expl. Co. v. Tejas Power Corp.*, 930 F. Supp. 289, 292 (S.D. Tex. 1996) ("A controversy exclusively over the price of gas which has already been produced, as in the instant case, simply does not implicate the interest expressed by Congress in the efficient exploitation of natural resources on the OCS."); *see also St. Joe Co. v. Transocean Offshore Deepwater Drilling Inc.*, 774 F. Supp. 2d 596, 609 (D. Del. 2011) (granting motion to remand Florida law claims and observing that, "[w]hile the federal government has sovereignty on the Outer Continental Shelf, states still have the power to adjudicate claims arising from activities there; i.e., states have concurrent jurisdiction").

[8] *Boulder I*, 405 F. Supp. 3d at 978 ("[F]or jurisdiction to lie, a case must arise directly out of OCS operations. . . . The fact that some of ExxonMobil's oil was apparently sourced from the OCS does not create the required direct connection."); *Rhode Island*, 393 F. Supp. 3d at 151–52 (no OCSLA jurisdiction even where "Defendants' operations on the [OCS] may have contributed to the State's injuries," because "Defendants have not shown that these injuries would not have occurred but for those operations"); *Baltimore I*, 388 F. Supp. 3d at 566 ("Even under a 'broad' reading of the OCSLA jurisdictional grant endorsed by the Fifth Circuit, defendants fail to demonstrate that OCSLA jurisdiction exists."); *San Mateo I*, 294 F. Supp. 3d at 938–39 ("Removal under the [OCLSA] was not warranted because even if some of the activities that caused the alleged injuries stemmed from operations on the [OCS], the defendants have not shown that the plaintiffs' causes of action would not have accrued *but for* the defendants' activities on the shelf.").

(plaintiffs' claims for injury to wildlife were a direct result of a massive oil spill caused by the explosion of an offshore drilling rig); *Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 139 S. Ct. 1881 (2019) (dispute over minimum wage and overtime pay for work performed on a drilling platform off the California coast); *Tenn. Gas Pipeline v. Houston Cas. Ins. Co.*, 87 F.3d 150 (5th Cir. 1996) (dispute concerning fixed platform on OCS damaged by tugboat); *United Offshore Co. v. S. Deepwater Pipeline Co.*, 899 F.2d 405, 406 (5th Cir. 1990) (contract dispute concerning natural gas pipeline running from OCS to Louisiana coast); *Amoco Prod. Co. v. Sea Robin Pipeline Co.*, 844 F.2d 1202, 1203 (5th Cir. 1988) (dispute concerning "take-or-pay obligations in contracts for the sale/purchase of natural gas" from natural gas platform); *Laredo Offshore Constructors, Inc. v. Hunt Oil Co.*, 754 F.2d 1223, 1225 (5th Cir. 1985) (dispute over contract for transportation and installation of offshore oil and gas platform). There is no such OCSLA hook for jurisdiction over this case.

> **E.    There is no federal officer removal jurisdiction because no federal officer directed the Defendants' actions at issue in this case: marketing and sales of fossil fuel products.**

Defendants' invocation of the federal officer removal statute, 28 U.S.C. § 1442, likewise does not support federal jurisdiction because (1) there is no plausible connection between the District's consumer protection claims and the activities described in the Notice of Removal; and (2) Defendants have not shown they "acted under" federal officers.

The federal officer removal statute permits removal only if the defendant, "in carrying out the 'act[s]' that are *the subject of the petitioners' complaint*, was 'acting under' any 'agency' or 'officer' of 'the United States.'" *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007) (emphasis added). "To satisfy this requirement, the officer must show a nexus, a causal connection between the charged conduct and asserted official authority." *K&D LLC v. Trump Old Post Office LLC*, 951 F.3d 503, 507 (D.C. Cir. 2020) (quoting *Jefferson Cty., Ala. v. Acker*, 527 U.S. 423, 431

(1999)). Here, Defendants assert they acted under federal officers by producing special fuel for the military, developing oil and gas under federal leases, and producing oil and operating infrastructure for the Strategic Petroleum Reserve. Not. of Rem. ¶¶ 62–95. Defendants cannot show even a tenuous connection, much less a causal one,[9] between the activities described in the Notice of Removal and the District's consumer protection Complaint, which addresses wholly different conduct.

Ignoring the Complaint's allegations detailing Defendants' misleading advertisements and deceptive sales and marketing, Defendants posit that their leasing of federal lands for exploration, drilling, and production of fossil fuels, along with certain contracts to sell certain fuels to the federal government, renders them federal officers entitled to this Court's jurisdiction. But it bears repeating—and any fair reading of the Complaint will confirm—that this case does not seek "to limit and ultimately end Defendants' production of fossil fuels," Not. of Rem. ¶ 3, nor to remedy "the effects of climate change," *id.* ¶ 15. Defendants' repeated incantation of a false narrative cannot change the fact that this action under the CPPA aims to protect D.C. consumers from Defendants' deceptive advertising and marketing in the District, period.

The district court in *Massachusetts* handily rejected federal officer jurisdiction, as should this Court. 2020 WL 2769681, at *10–12. Recognizing that ExxonMobil's arguments were based on an "overreading" of the complaint that "seize[d] on a few lines here and there" and took them "out of context," the court explained that "[a] fair reading of the complaint tells a far different

---

[9] Following Congress's addition of the words "or relating to" in the federal officer removal statute in 2011, some circuits have relaxed the causal nexus requirement such that "a connection or association between the act in question and the federal office" now suffices. *K&D LLC*, 951 F.3d at 507 n.1. In *K&D LLC*, the D.C. Circuit recognized this but declined to decide the effect of the amended language. *Id.* Resolving this open question is unnecessary here, however, as federal officer removal is improper under any interpretation of the nexus requirement.

story." *Id.* at \*11–12. The court rebuffed ExxonMobil's effort to remove on this basis, reasoning that the actions at issue in the complaint—ExxonMobil's false and deceptive marketing and sales tactics—"were not plausibly 'relat[ed] to' the drilling and production activities supposedly done under the direction of the federal government." *Id.* at \*12.

*Massachusetts* also relied on the Fourth Circuit's similar rejection of federal officer jurisdiction in Baltimore's case against fossil fuel industry defendants, which alleged claims under Maryland common law as well as that state's Consumer Protection Act. The Fourth Circuit likewise saw through the defendants' mischaracterization of the complaint, explaining that any stray references to fossil fuel production are "not the source of tort liability," and that "[w]hen read as a whole, the Complaint clearly seeks to challenge the promotion and sale of fossil fuel products without warning," as well as the "concealment and misrepresentation of the products' known dangers." *Baltimore II*, 952 F.3d at 467. Even in that case—which involved environmental damages from climate change impacts and thus "the actual production of fossil fuels was far more related to the complaint than it is here"—"the Fourth Circuit found it easy to separate the properly pled misrepresentation allegations from the surrounding context of fossil fuel production, holding that the alleged 'disinformation campaign' was the core of the complaint and was unrelated to any action under federal officials." *Massachusetts*, 2020 WL 2769681, at \*12 (quoting *Baltimore II*, 952 F.3d at 467); *see also Rhode Island*, 393 F. Supp. 3d at 151–52 ("Defendants cannot show the alleged promotion and sale of fossil fuels abetted by a sophisticated misinformation campaign were 'justified by [their] federal duty.'" (quoting *Mesa v. California*, 489 U.S. 121, 131–32 (1989)).

The result is no different here. Like *Massachusetts*, the conduct at issue is Defendants' deceptive marketing activities, and Defendants' attempt to convince the Court otherwise in the

notice of removal is an elaborate misdirection. The District's Complaint does not challenge Defendants' drilling activities or their development of oil and gas on federal lands, nor does it seek relief to stop or reduce Defendants' production or sale of fossil fuel products, including to the federal government. *See* Not. of Rem. ¶¶ 75–95. Defendants do not claim—nor could they—that federal officers dictated the content of Defendants' advertisements to D.C. consumers or the concealment of their products' known hazards. *See, e.g.*, *id.* ¶ 74 (no allegation that the government controlled Defendants' marketing of their unidentified "consumer products" at military exchanges located in the District, or even that such products were ever marketed and sold to D.C. consumers under any Defendant's name). Nor do Defendants cite any case upholding federal officer removal in an analogous context. That is because courts routinely reject federal jurisdiction in state-law cases involving deceptive marketing, particularly where, as here, there is no assertion that the government controlled that marketing in any way. *See, e.g.*, *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 488 F.3d 112, 131 (2d Cir. 2007) (federal officer removal improper where federal regulations "say nothing" about marketing and other tortious conduct). As in *Massachusetts*, this Court can and should end its inquiry here and reject federal officer jurisdiction due to the lack of any connection between the conduct in the Complaint and any purported activity under a federal officer.[10]

---

[10] Even if this Court were to look beyond the "relating to" element of § 1442(a)(1), Defendants have also failed to meet their separate burden to establish the "acting under" aspect, i.e., that any of the actions asserted "involve[d] an effort to *assist*, or to help *carry out*, the duties or tasks of [a] federal superior" or that its relationship with the federal superior "involve[d] 'subjection, guidance, or control.'" *Watson*, 551 U.S. at 151–52. Defendants rely on their commercial relationship with federal entities arising out of leasing mineral rights or selling an off-the-shelf commodity or jet fuel to the government. But even in cases brought by governmental entities seeking to obtain damages under state tort law to compensate in part for the harmful effects of greenhouse gas emissions (unlike the District's CPPA claims here), every court to consider federal officer jurisdiction has rejected the defendants' assertions of "acting under" federal officers. *See*

**F.      The Class Action Fairness Act does not provide a basis for removal because this is not a "class action."**

Defendants next assert that the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), supplies a basis for removal—even though this is not a class action. Defendants cite no authority in support of this specious argument because there is none: every single court to have addressed this issue in an analogous context has concluded that CAFA does not apply to *parens patriae* actions like this one, brought by a state under its own consumer protection laws. *See, e.g.*, *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 212–20 (2d Cir. 2013); *LG Display Co. v. Madigan*, 665 F.3d 768, 770–72 (7th Cir. 2011); *Washington v. Cimei Innolux Corp.*, 659 F.3d 842, 847–48 (9th Cir. 2011); *W. Va. ex rel. McGraw v. CVS Pharmacy, Inc.*, 646 F.3d 169, 174–77 (4th Cir. 2011); *see also Mississippi ex rel. Hood v. AU Optronics Corp.*, 701 F.3d 796, 799 (5th Cir. 2012) (consumer protection action brought by state attorney general not a "class action" under CAFA), *rev'd on other grounds*, 571 U.S. 161 (2014) (same action also not a "mass action" subject to removal under CAFA).[11] Consistent with this precedent, the *Massachusetts* court rejected an

---

*Baltimore II*, 952 F.3d at 463–66 (holding that fossil fuel companies were not "acting under" federal officials, within the meaning of § 1442(a)(1), in developing oil and gas pursuant to federal leases and national petroleum reserves); *San Mateo II*, 960 F.3d at 601–03 (same); *Boulder II*, 965 F.3d at 819–27 (same).

[11] *See also, e.g.*, *Nessel ex rel. Mich. v. Amerigas Partners, L.P.*, 421 F. Supp. 3d 507, 514 (E.D. Mich. 2019); *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 667 (9th Cir. 2012); *In re Vioxx Prods. Liab. Litig.*, 843 F. Supp. 2d 654, 664 (E.D. La. 2012); *West Virginia v. JP Morgan Chase & Co.*, 842 F. Supp. 2d 984, 995–96 (S.D.W. Va. 2012); *In re Oxycontin Antitrust Litig.*, 821 F. Supp. 2d 591, 602–03 (S.D.N.Y. 2011); *S. Carolina v. AU Optronics Corp.*, No. 3:11-cv-00731-JFA, 2011 WL 4344079, at *3–7 (D.S.C. 2011); *Arizona v. Countrywide Fin. Corp.*, No. CV 11-131-PHX-FJM, 2011 WL 995963, at *3 (D. Ariz. 2011), *appeal denied*, 665 F.3d 1165 (9th Cir. 2012); *Illinois v. AU Optronics Corp.*, 794 F. Supp. 2d 845, 856–58 (N.D. Ill. 2011); *Missouri ex rel. Koster v. Portfolio Recovery Assocs., Inc.*, 686 F. Supp. 2d 942, 946–47 (E.D. Mo. 2010); *Okla. ex rel. Edmondson v. BP Am. Inc.*, No. CIV-09-945, 2009 WL 10695372, at *2 (W.D. Okla. Oct. 29, 2009).

identical argument, raised by ExxonMobil, in a similar consumer protection case brought by the state's attorney general. *See* 2020 WL 2769681, at \*15. This Court should do the same.

Federal jurisdiction pursuant to CAFA is narrow. It confers federal jurisdiction only over specific actions—those that qualify as a "class action" or "mass action"—and that satisfy particular requirements. *See, e.g.*, *Purdue Pharma*, 704 F.3d at 213; 28 U.S.C. § 1332(d)(1)–(2); 28 U.S.C. § 1453(b). Under CAFA, a "class action" is "any civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). D.C. Superior Court Rule of Civil Procedure 23, for example, is a "similar State statute," but this case was not brought under either Federal Rule of Civil Procedure 23 or D.C.'s analogue. Instead, the Complaint was filed pursuant to the CPPA, which provides that the Attorney General "may bring an action in the Superior Court of the District of Columbia" to enforce the law's requirements. D.C. Code § 28-3909(a). An action that does not qualify as a "class action" is not subject to CAFA, "regardless whether they meet the other prerequisites of numerosity, minimal diversity, and amount in controversy." *Purdue Pharma*, 704 F.3d at 214. Thus, the Court should find that CAFA jurisdiction does not exist because this case is not a "class action" as that term is defined by CAFA.

Ignoring the plain language of the statute (and the common-sense interpretation that other courts have applied), Defendants insist that the CPPA is "similar" to Rule 23 because the D.C. Court of Appeals has said that when an individual seeks to bring a suit for damages on behalf of himself and the public under the CPPA, he must satisfy the requirements of Rule 23. *See Rotunda v. Marriott Int'l, Inc.*, 123 A.3d 980 (D.C. 2015). But *Rotunda* concerned individual lawsuits for damages under D.C. Code § 28-3905(k), not actions brought by the Attorney General under D.C.

Code § 28-3909. Nor did *Rotunda* involve jurisdictional questions or address in any way the question at hand: whether the CPPA is similar to Rule 23. Rather, the *Rotunda* court's holding that individual consumers seeking to bring damages actions on behalf of themselves and others must satisfy the requirements of a class action stands only for the unremarkable proposition that the CPPA amendments did not implicitly repeal or rework Rule 23. It does not mean that actions brought by the Attorney General are subject to Rule 23.

The *Massachusetts* decision is again instructive. *See* 2020 WL 2769681, at *13. There, ExxonMobil argued that the Massachusetts consumer protection statute was "similar" to Rule 23 because the Massachusetts Appeals Court had once said that "[a]n action brought by the Attorney General under [Mass.] G.L. c. 93A, § 4, is comparable to a class action." *See id.* (citing *Commonwealth v. Chatham Dev. Co.*, 49 Mass. App. Ct. 525, 528 (2000)). But the district court rejected this argument, explaining that "the fact that Massachusetts courts recognize chapter 93A, section 4 claims as in some ways analogous to class actions does not bring such claims within CAFA's federal jurisdiction unless the statute contains <u>procedures</u> 'similar' to those under Rule 23." *Massachusetts*, 2020 WL 2769681, at *14 (emphasis in original). In the absence of such procedures, the consumer protection statute was not "similar" to Rule 23. *See id.* Defendants' citation to a D.C. Court of Appeals opinion that references only private, not Attorney General actions (unlike the Massachusetts Appeals Court case) provides even less support for its position than the cases cited in *Massachusetts*.

Defendant's remaining argument—that "CAFA's purposes are best served by litigating this case in federal court"—fails too. Not. of Rem. ¶ 123. CAFA is "sensitive to deeply-rooted principles of federalism, reserving to the States primarily local matters." *CVS Pharmacy*, 646 F.3d at 178. The District filed this case in the District's Superior Court to enforce its own laws and did

not voluntarily consent to removal of its case to federal court. Under these circumstances, "a federal court should be most reluctant to compel removal, reserving its constitutional supremacy only for when removal serves an *overriding* federal interest." *Id.* (emphasis added).

### G. Diversity jurisdiction cannot be premised on indirect benefits to D.C. citizens because the Attorney General is the real party in interest.

This case was brought by the District and thus is not removable based on diversity because "diversity of jurisdiction does not exist between a state and a citizen of another state." *District of Columbia v. 2626 Naylor Road, S.E. Wash., D.C. 20020*, 763 F. Supp. 2d 5, 10 (D.D.C. 2011); *see also Moor v. Alameda Cty.*, 411 U.S. 693, 717 (1973) ("There is no question that a State is not a 'citizen' for purposes of the diversity jurisdiction."). Defendants nevertheless argue that because some benefits may flow to D.C. residents, the District's presence in this action is purely nominal, such that D.C. citizens are the real parties in interest, giving rise to diversity jurisdiction under 13 U.S.C. § 1332(a). Not so. Numerous courts have held in consumer protection cases similar to this one, where the state seeks injunctive relief that will benefit a substantial portion of the population, that the state was the real party in interest even though the state also sought restitution for individual consumers. *See, e.g.*, *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 671 (9th Cir. 2012); *Virginia v. Supportkids Servs., Inc.*, No. 3:10-cv-73, 2010 WL 1381420, at *4 (E.D. Va. Mar. 30, 2010); *Illinois v. SDS W. Corp.*, 640 F. Supp. 2d 1047, 1051–52 (C.D. Ill. 2009); *California v. Univ. Syndications, Inc.*, No. C 09-1186 JF (PVT), 2009 WL 1689651, at *4–5 (N.D. Cal. June 16, 2009); *Kentucky ex rel. Stumbo v. Marathon Petrol. Co.*, Civ. A. No. 3:07-CV-00030-KKC, 2007 WL 2900461, at *5 (E.D. Ky. Oct. 3, 2007); *Hood ex rel. Miss. v. Microsoft Corp.*, 428 F. Supp. 2d 537, 546 (S.D. Miss. 2006); *Wisconsin v. Abbott Labs.*, 341 F. Supp. 2d 1057, 1061 (W.D. Wis. 2004); *Kansas ex rel. Stovall v. Home Cable Inc.*, 35 F. Supp. 2d 783, 785–86 (D. Kan. 1998); *Missouri ex rel. Webster v. Best Buy Co.*, 715 F. Supp. 1455, 1457 (E.D. Mo. 1989);

*State of N.Y. by Abrams v. Gen. Motors Corp.*, 547 F. Supp. 703, 707 (S.D.N.Y. 1982); *Illinois ex rel. Scott v. Hunt Int'l Res. Corp.*, 481 F. Supp 71, 73–74 (N.D. Ill. 1979).

Defendants' cases do not support a different result. Defendants rely primarily on the century-old case *Missouri, K. & T. Ry. Co. of Kansas v. Hickman*, 183 U.S. 53 (1901), in which the Supreme Court held that a general government interest in welfare is insufficient to render it a real party. But *Hickman* was not brought to benefit a substantial portion of the state's population, but "to compel compliance with an order of the railroad commissioners in respect to rates and charges." *Id.* at 59. Because the state did not have any underlying interest at stake in *Hickman*, district courts overwhelmingly have read it to apply *only* where the state would not have benefited "'in any degree.'" *SDS W. Corp.*, 640 F. Supp. 2d at 1051–52 (quoting *Hickman*, 183 U.S. at 59) (collecting cases in accord). And the subsequent Supreme Court case *Maryland v. Louisiana*, 451 U.S. 725, 737 (1981), which is more factually analogous to the case at bar albeit in the original jurisdiction context, held that a state's interest in a lawsuit is real when the state is acting "as the representative of its citizens in original actions where the injury alleged affects the general population of a State in a substantial way." Thus, where the state challenges a practice that affects a "substantial portion" of its population, as the District is doing here, the state has "an interest apart from that of the individuals affected . . . which is immediate and recognized by law." *Id.* at 738 (quoting *Pennsylvania v. West Virginia*, 262 U.S. 553, 592 (1923)); *see also Nevada*, 672 F.3d at 670–71 (finding state goal in protecting consumers from widespread misconduct and economic injury to be "a specific, concrete interest").

Defendants' other cases fare no better, as they are based on idiosyncratic state regulatory schemes that give the attorneys general limited or ministerial powers. *See* Not. of Rem. ¶¶ 127–28 (citing cases). These cases have no bearing on the facts here, where the District confers on the

Attorney General broad powers to protect District consumers, an interest recognized by the Supreme Court in *Maryland*, years after the cases Defendants cite were decided. *See* 451 U.S. at 737. Indeed, the only case decided after *Maryland v. Louisiana* that Defendants cite is the Ninth Circuit case *Dep't of Fair Empl. & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728 (9th Cir. 2011). But tellingly, Defendants' omit the Ninth Circuit's analysis of *Lucent* one year later in *Nevada*, 672 F.3d 661. There, the Ninth Circuit distinguished *Lucent* because in that case, the state had brought a claim on behalf of a single aggrieved employee pursuant to a unique statutory scheme. *Id.* at 669–70. The court went on to hold that "Nevada—not the individual consumers—is the real party in interest in this controversy" because the state sued to protect hundreds of thousands of people deceived by the defendant, had statutory authority to bring its claims, and a sovereign interest in enforcement of its consumer fraud laws. *Id.* at 670–71. This Court should hold the same, as even Defendants' own cases demonstrate that the District is the real party in interest here.

## V.      CONCLUSION

For the foregoing reasons, the District requests that this Court remand the Complaint to the D.C. Superior Court. Moreover, pursuant to 28 U.S.C. § 1447(c), the District respectfully requests that the Court award just costs and actual expenses, including attorney's fees, incurred by the District as a result of Defendants' improper removal, or in the alternative, that the District be permitted to brief this issue further. An award of fees is warranted since Defendants' removal was objectively unreasonable, as demonstrated by the unanimous opinions of district and appellate courts across the country rejecting subject matter jurisdiction in substantially similar circumstances. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

//

//

34

Respectfully Submitted,

Dated:  August 31, 2020

**KARL A. RACINE**
**Attorney General for the District of Columbia**

By:      */s/ Kathleen Konopka* _____

KATHLEEN KONOPKA [5531538]
   Deputy Attorney General
   Public Advocacy Division
JIMMY R. ROCK [493521]
   Assistant Deputy Attorney General
   Public Advocacy Division
BENJAMIN M. WISEMAN [1005442]
   Director, Office of Consumer Protection
DAVID S. HOFFMANN [983129]
    Assistant Attorney General
441 4th St., N.W.
Washington, DC 20001
(202) 741-5226
kathleen.konopka@dc.gov
jimmy.rock@dc.gov
benjamin.wiseman@dc.gov
david.hoffmann@dc.gov

*/s/ Victor M. Sher* _____

VICTOR M. SHER (*pro hac vice*)
MATTHEW K. EDLING [1020217]
CORRIE YACKULIC (*pro hac vice* forthcoming)
KATIE H. JONES (*pro hac vice* forthcoming)
NICOLE E. TEIXEIRA (*pro hac vice* forthcoming)
**SHER EDLING LLP**
100 Montgomery St., Ste. 1410
San Francisco, CA 94104
(628) 231-2500
matt@sheredling.com
vic@sheredling.com
corrie@sheredling.com
katie@sheredling.com
nicole@sheredling.com

HASSAN A. ZAVAREEI [456161]
ANNA C. HAAC [979449]

35

KATHERINE M. AIZPURU [1022412]
KRISTEN G. SIMPLICIO [977556]
**TYCKO & ZAVAREEI, LLP**
1828 L Street NW, Suite 1000
Washington, DC 20036
(202) 973-0900
hzavareei@tzlegal.com
ahaac@tzlegal.com
kaizpuru@tzlegal.com
ksimplicio@tzlegal.com

*Attorneys for the District of Columbia*