**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

DISTRICT OF COLUMBIA,

   *Plaintiff*,

 v.

EXXON MOBIL CORPORATION *et al.*,

   *Defendants*.

Civil Action No. 20-1932 (TJK)

<u>**MEMORANDUM OPINION**</u>

  The District of Columbia sued Defendants, a group of energy companies, for violating a District of Columbia consumer protection law.  The District alleges, among other things, that Defendants knowingly misrepresented the effects of fossil fuel products to consumers within the District through misleading advertisements and biased scientific studies.  Defendants removed the case to federal court, invoking seven bases for the Court's subject-matter jurisdiction.  The District of Columbia moved to remand to Superior Court, and Defendants opposed.  For the following reasons, the Court will grant the District's motion to remand.

**I.**  **Background**

  The District of Columbia ("the District") sued Exxon Mobil, BP, Chevron, Shell Oil, and relevant subsidiaries ("Defendants") in District of Columbia Superior Court for alleged violations of the D.C. Consumer Protection Procedures Act ("the Act").  ECF No. 1-14 at 6.  According to the District, Defendants have known about the harmful effects of fossil fuels for decades yet have misrepresented those effects and "promoted disinformation" to District of Columbia consumers.  *Id.* at 36.  The complaint alleges, for example, that Defendants "funded and controlled" scientists to manipulate public perception on fossil fuels and embarked on "misleading" advertising campaigns in the *Washington Post* and elsewhere to deceive the public about the effects of fossil fuels

on the environment.  *See, e.g.*, *id.* at 41–42.  The District also alleges that Defendants' violations of the Act are ongoing, and that Defendants have now "turned their attention to misleading consumers about their level of investment in cleaner energy sources."  *Id.* at 53.  According to the complaint, Defendants have undertaken "greenwashing campaigns," in which they promote their investment in "alternative energy sources" but intentionally overstate their commitment to non-fossil fuels.  *See, e.g.*, *id.* at 58.  According to the District, Defendants' actions have caused "existential" environmental injuries—such as rising temperatures and sea levels—which cause "damage [to] critical infrastructure and property," "heat waves," "flooding," and other "extreme weather." ECF No. 1-14 at 52–53.

The District claims that each Defendant and its subsidiary violated the Act by "engaging in a number of deceptive acts and practices in its marketing, promotion, and sale of fossil fuel products."  ECF No. 1-14 at 77, 80, 82, 84–86.  For relief, the District seeks an order enjoining Defendants from violating the Act.  It also seeks civil penalties, restitution, and damages as provided by the Act.  *Id.* at 86–87; *see* D.C. Code § 28-3909.

Exxon removed the case to this Court, ECF No. 1, and the other defendants consented, ECF No. 8, 12, 16.  In the notice of removal, Defendants claimed that removal is proper because (1) the claims arise under federal common law; (2) the lawsuit raises disputed and substantial federal issues under *Grable*; (3) the action arises out of federal enclaves; (4) the Federal Officer Removal statute applies; (5) the Outer Continental Shelf Lands Act applies; (6) diversity jurisdiction exists; and (7) the Class Action Fairness Act applies.  ECF No. 1 at 11–12.  The District moved to remand, ECF No. 45, and Defendants opposed, ECF No. 51.  Since then, the parties have peppered the docket with notices of supplemental authority.  *See, e.g.*, ECF Nos. 66, 68, 71, 74, 77, 78, 82, 84, 87, 89, 91, 93, 97, 103, 107, 108, 112, 114.

## II.     Legal Standard

Federal courts are courts of limited jurisdiction and "possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005).  Thus, "[a] civil action filed in state court may only be removed to a United States district court if the case could originally have been brought in federal court." *Nat'l Consumers League v. Flowers Bakeries, LLC*, 36 F. Supp. 3d 26, 30 (D.D.C. 2014) (citing 28 U.S.C. § 1441(a)).  "When a plaintiff files a motion to remand, the removing defendant bears the burden of proving that removal was proper." *Arenivar v. Manganaro Midatlantic, LLC*, 317 F. Supp. 3d 362, 367 (D.D.C. 2018) (internal quotation marks omitted).  "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447. "Any doubts about the existence of subject matter jurisdiction are to be resolved in favor of remand." *Witte v. Gen. Nutrition Corp.*, 104 F. Supp. 3d 1, 3 (D.D.C. 2015) (cleaned up).

## III.     Analysis

Defendants raise seven theories for the Court's subject-matter jurisdiction.  Each, they say, is an independent ground for removal.  None is.

### A.     Federal Common Law Does Not Confer Jurisdiction Over the District's Claims

Defendants argue that the suit must be heard in federal court because the District's claims implicate interstate pollution, the navigable waters of the United States, and foreign affairs, and therefore its consumer protection claims "necessarily" arise under federal common law.  In other words, even though the District did not plead a federal claim, Defendants say that the Court has jurisdiction because claims "may arise under federal common law regardless of whether a plaintiff affixes a federal law label."  ECF No. 51 at 29.  In response, the District argues that federal common law does not apply to its state consumer protection claims, but even if it did, it cannot support

removal because the federal question must appear on the face of their well-pleaded complaint, and complete preemption does not apply.  ECF No. 63 at 18–19.

For Defendants to demonstrate federal-question jurisdiction on federal common law grounds, they must first show that federal common law applies to the District's false-advertising claims or that the Court should fashion a new federal common law rule.  Defendants come up well short on this first step.

The Court has original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  "There is, of course, 'no federal general common law.'"  *Texas Indus., Inc. v. Radcliff Materials*, 451 U.S. 630, 640 (1981) (quoting *Erie R.R. Co. v. Tomkins*, 304 U.S. 64, 78 (1938)).  But the Supreme Court has recognized "few and restricted" areas of federal common law to protect "uniquely federal interests."  *Id.*  Federal courts should tread lightly in this area, however, because "whether latent federal power should be exercised to displace state law is primarily a decision for Congress."  *Atherton v. FDIC*, 519 U.S. 213, 218 (1997) (cleaned up).  In the rare instance when a federal court creates such a rule, it must ensure two things.  First, the state law or claim must affect "uniquely federal interests."  *Boyle v. United Techs. Corp.*, 487 U.S. 500, 504 (1988).  Second, there must be "significant conflict" between the federal interests and state law.[1]  *Id.* at 507.

---

[1] Defendants argue that this test for creating federal common law does not apply and that the Court has jurisdiction if "plaintiff has stated a viable federal claim." ECF No. 51 at 29.  In support, they cite only a case from the First Circuit, *United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 42–45 (1st Cir. 1999), but that case is inapt.  There, the plaintiff brought asset forfeiture claims in federal court based on federal common law theories.  *Id.* at 42.  Thus, state law was not in the picture, and the court only had to address whether the plaintiff had a cognizable claim under federal common law.  The court did not address the dispositive question here:  whether there is "significant conflict" between a state law claim and federal interests such that the state law claim cannot exist.

Defendants use almost all their opposition to argue that the District's claims "implicate" three uniquely federal interests: interstate pollution, the navigable waters of the United States, and foreign affairs. Fair enough.[2] But even so, their argument fails because they have not shown a "significant conflict" between the District's claims under the Act and a federal interest they identify. *See O'Melveny & Myers v. FDIC*, 512 U.S. 79, 88 (1994) (failing to show "significant conflict" is "fatal" to federal common law argument). Simply put, they do not engage with this prong of the federal common law test. *See, e.g.*, ECF No. 51 at 29 (arguing only that the District's claims "implicate" federal interests). They do not, for example, sufficiently describe actual conflict between the Act's protections against misleading advertising and federal interests in regulating "transboundary pollution." Nor do they explain how the District's false-advertising claims conflict with federal interests in regulating the navigable waters or in foreign affairs. Defendants do not even use the phrase "significant conflict" in their opposition. Several courts have found this shortcoming dispositive, and the Court agrees with their reasoning. *See, e.g.*, *Mayor and City Council v. BP P.L.C.*, 31 F.4th 178, 202 (4th Cir. 2022) (defendants' failure to establish significant conflict "substantively precludes the creation of federal common law"); *Rhode Island v. Shell Oil Prods. Co., LLC*, 35 F.4th 44, 54–56 (1st Cir. 2022) (explaining that defendants do not "adequately describe" the significant conflict between federal interests and the state law claims).

The closest Defendants come to identifying any such conflict is by reference to a case in the Southern District of New York. There, the court granted the defendants' motion to dismiss under Rule 12(b)(6) and held that New York City's nuisance claims could not proceed under state

---

[2] The Court assumes, without deciding, that Defendants have identified "uniquely federal interests" to satisfy the first part of the federal common law test. *See Mayor and City Council v. BP P.L.C.*, 31 F.4th 178, 202 (4th Cir. 2022); *Rhode Island v. Shell Oil Prods. Co., LLC*, 35 F.4th 44, 54 (1st Cir. 2022).

law because federal common law preempted them.  *See City of New York v. BP P.L.C.*, 325 F. Supp. 3d 466, 471 (S.D.N.Y. 2018), *aff'd sub nom. City of New York v. Chevron Corp.*, 993 F.3d 81 (2d Cir. 2021).  But that case has limited relevance here; it involved an ordinary preemption defense at the motion-to-dismiss stage.  The case was also brought in federal court, so removal was not at issue.  Thus, the trial court never considered whether federal common law completely preempted any state law pollution claims and justified removal of a state-law claim.  The Second Circuit recognized the importance of this procedural posture in its affirmance, explaining that it was considering the "preemption *defense* on its own terms, not under the heightened standard unique to the removability inquiry."  *City of New York v. Chevron Corp.*, 993 F.3d at 94 (emphasis added).  In any event, Defendants do not explain how that case shows "significant conflict" between the District's false advertising claims and the federal interests they identify, nor do they engage in the extensive analysis the Supreme Court has undertaken in its past cases to determine whether significant conflict exists.  *See, e.g., Atherton*, 519 U.S. at 216–19; *Boyle*, 487 U.S. at 511–12.  On this score, the Court is aligned with at least three courts of appeals.[3]  *See BP P.L.C.*, 31 F.4th at 202–03; *Shell Oil*, 35 F.4th at 55; *Bd. of Cnty. Comm'rs. v. Suncor Energy (U.S.A.)*

---

[3] Defendants also seek to rely on *American Electric Power Co. v. Connecticut* ("*AEP*"), 564 U.S. 410 (2011), to support their argument that federal common law governing "transboundary pollution" claims governs the District's claims, s*ee* ECF No. 51 at 31–32.  That case does not help them. In *AEP*, the plaintiffs asserted nuisance claims under federal common law in federal court, and the Supreme Court held that Congress had displaced the federal common law in this area with the Clean Air Act.  *See AEP*, 564 U.S. at 424.  Under *AEP*, it is unclear how the District's claims could arise under federal common law in this area if those "federal law claim[s] [have] been deemed displaced, extinguished, and rendered null by the Supreme Court."  *BP P.L.C.*, 31 F.4th at 206. The Court cannot find that the District's claims arise under federal common law "based on a non-existent theory of federal common law when its viability is 'no longer open to discussion.'" *BP P.L.C.*, 31 F.4th at 207 (quoting *Hagans v. Levine*, 415 U.S. 528, 537 (1974)).

*Inc.*, 25 F.4th 1238, 1262 (10th Cir. 2022).  Federal common law does not apply to the District's claims.

Even if federal common law applied here, though, Defendants hit another roadblock: the well-pleaded complaint rule, which limits federal-question jurisdiction.  The rule mandates that "the federal question must appear on the face of a well-pleaded complaint and may not enter in anticipation of a defense."  *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 494 (1983).  The rule applies both to the Court's original jurisdiction and a defendant's ability to remove a case on federal-question grounds under 28 U.S.C. § 1441.  *See Franchise Tax Bd. v. Constr. Laborers Vacation Tr. for S. Cal.,* 463 U.S. 1, 10 n.9 (1983).  The plaintiff is therefore the "master of the claim" and may "avoid federal jurisdiction by exclusive reliance on state law" when drafting its complaint.  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).  Federal-question jurisdiction does not exist if defendants raise a *defense* rooted in federal law.  *See, e.g.*, *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004).

Defendants argue that the well-pleaded complaint rule does not apply here.  And indeed, there are exceptions to this general rule.  One is the doctrine of complete preemption.  Sometimes, a "federal statute completely preempts the state law cause of action," and the claim, "even if pleaded in terms of state law, is in reality based on federal law."  *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003).  Federal courts therefore have jurisdiction over that claim because "the preemptive force of [the] statute is so extraordinary that it converts an ordinary state-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule."  *Caterpillar*, 482 U.S. at 493.  This scenario is rare; the Supreme Court has recognized complete preemption in the cases of only three federal statutes.  *See Beneficial*, 539 U.S. at 6–11.  Complete preemption differs from ordinary preemption, which is a defense that "forecloses a plaintiff from stating a legally

cognizable claim for recovery" based on state law. *Sickle v. Torres Advanced Enter. Sols., LLC*, 884 F.3d 338, 345 (D.C. Cir. 2018). An ordinary preemption defense does not create federal-question jurisdiction. *See Caterpillar*, 482 U.S. at 398–99.

Defendants say that "federal common law exclusively governs claims for interstate and international pollution because the Constitution dictates that 'state law cannot be used.'" ECF No. 51 at 38 (quoting *City of Milwaukee v. Illinois and Michigan*, 451 U.S. 304, 314 n.7 (1981)). Although Defendants skillfully avoid using the term "complete preemption," they effectively argue for a "new form of complete preemption"—mandated by the Constitution, they say—rooted in federal common law. *City of Hoboken v. Chevron Corp.*, 45 F.4th 699, 707 (3d Cir. 2022). True, as described above, complete preemption is an exception to the well-pleaded complaint rule. But the Supreme Court has only recognized complete preemption in the context of federal *statutes*. *See City of Hoboken*, 45 F.4th at 707. And even then, the Supreme Court has recognized it only three times. *See id.* Defendants furnish no authority suggesting that the federal common law can "transform" a state law claim into a federal one. *Caterpillar*, 482 U.S. at 399. This is unsurprising, given that complete preemption requires a "clear and manifest purpose" from Congress—something unavailable from a judge-made federal common law rule. *City of Milwaukee*, 451 U.S. at 316. Two courts of appeals have ended similar removal inquiries there, and the Court finds that reasoning persuasive as well. *See City of Hoboken*, 45 F.4th at 708 ("So because [the defendants] have no statute, they have no removal jurisdiction either."); *Suncor*, 25 F.4th at 1262 ("[B]ecause the federal common law does not *completely* preempt state law, removal is not warranted . . . ."). Of course, Defendants may eventually invoke a preemption defense when challenging the merits of the District's claim. But the Court is aware of no authority holding that the existence of a federal common law claim completely preempts any state law claim on that topic and "transform[s]" any

state claim into a federal one, "thereby selecting the forum in which the claim shall be litigated." *Caterpillar*, 482 U.S. at 399.

### B.        Removal is Improper Under *Grable*

Defendants contend that removal is proper because the District's claims necessarily raise a disputed and substantial federal question under *Grable*. ECF No. 51 at 39. *Grable* says that in rare circumstances, federal-question jurisdiction exists even if a complaint fails the well-pleaded complaint rule. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313–14 (2005)). Under this doctrine, "federal jurisdiction over a state law claim will lie if a federal issue is:  (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). Because exercising this jurisdiction approaches "the outer reaches of § 1331," *Merrell Dow Pharm. v. Thompson*, 478 U.S. 804, 810 (1986), the Supreme Court has repeatedly characterized the cases satisfying this test as a "slim category," *Gunn*, 568 U.S. at 258; *Empire Healthchoice Assurance., Inc. v. McVeigh*, 547 U.S. 677, 701 (2006).

For a federal issue to be "necessarily raised," it must be an "essential element" of the state-law claim. *D.C. Ass'n of Chartered Pub. Schools v. District of Columbia*, 930 F.3d 487, 491 (D.C. Cir. 2019) (quoting *Grable*, 545 U.S. at 315). Courts exercising *Grable* jurisdiction identify a precise federal issue and explain why that issue is necessary to resolve the state law claim. *See, e.g.*, *Grable*, 545 U.S. at 310 (state law quiet-title suit requiring interpretation of Internal Revenue Code's notice requirement); *Gunn*, 568 U.S. at 259 (state legal-malpractice claim required application of federal patent law); *Bender v. Jordan*, 623 F.3d 1128, 1130–31 (D.C. Cir. 2010) (state breach-of-contract claim required interpretation of federal regulation); *District of Columbia v. Grp. Hosp. and Med. Servs.*, 576 F. Supp. 2d 51, 54–55 (D.D.C. 2008) (state-law claims required determination whether defendants violated their congressional charter).

Nothing similar is present here.  In sum, Defendants have identified no disputed federal issue necessary to resolve the District's consumer protection claims.[4]  They argue that the District's "theory of deception" implicates a slew of federal interests, including the federal government's regulatory framework on climate issues, national policies balancing energy production with environmental protection, and foreign affairs.  ECF No. 51 at 40–43.  Even so, Defendants merely explain purported benefits of federal jurisdiction; they do not point to any "nearly pure question of federal law" necessary to adjudicate the District's claims.  *Bender*, 623 F.3d at 145.  For example, Defendants cite the Clean Air Act and other federal regulations to argue that "Congress has already weighed the costs and benefits of fossil fuels" and thus it is "essential" that the District's claims are resolved in federal court.  ECF No. 51 at 42.  They similarly contend that allowing the District to proceed in state court would "disrupt the principles of federalism."  *Id.* at 47.  But the District's claims under the Act—that Defendants misled consumers about the effects of fossil fuels—can be adjudicated without a court resolving any questions of federal law.  Defendants may raise these federalism concerns as a preemption defense later, but such a defense does not create federal-question jurisdiction.  *See Suncor*, 25 F.4th at 1266.

Other courts have declined to exercise *Grable* jurisdiction in similar circumstances.  *See Shell Oil*, 35 F.4th at 56–57; *BP P.L.C.*, 31 F.4th at 208–215; *Suncor*, 25 F.4th at 1267. Simply put, Defendants identify no question involving any federal statute, regulation, or other federal issue necessarily raised for the District to prevail under the Act, and "speaking about federal law or federal concerns in the most generalized way is not enough for *Grable* purposes."  *Shell Oil*, 35

---

[4] The District's claims under the Act require that Defendants misrepresent goods or services to consumers within the District; misrepresent a material fact that has a tendency to mislead; or fail to state a material fact if that failure tends to mislead.  *See* D.C. Code § 28-3904(a), (e), (f).

F.4th at 57.  The Court therefore finds that *Grable* jurisdiction does not lie, and removal is not proper on that ground.[5]

### C.   The Court Does Not Have Federal Enclave Jurisdiction

Defendants argue that some of Defendants' alleged unlawful conduct occurred within federal enclaves—including military installations such as Fort Lesley J. McNair, and monuments and parks controlled by the National Park Service—and therefore the Court has exclusive jurisdiction over the District's claims under the Constitution.  ECF No. 51 at 47.  They also argue that by "targeting" Defendants' oil and gas operations, the District's claims "necessarily sweep[ ] in those operations that occur on military bases and other federal enclaves." *Id.* at 48.

The Constitution authorizes Congress "[t]o exercise exclusive Legislation in all Cases whatsoever . . . over all Places purchased . . . for the Erection of Forts, Magazines, Arsenals, Dock-Yards, and other needful Buildings."  U.S. Const. art. I, § 8, cl. 17.  Known as the "Enclave Clause," courts have "generally read [the clause] to establish federal subject matter jurisdiction over tort claims occurring on federal enclaves . . . even when applying state law." *Jograj v. Enter. Servs., LLC*, 270 F. Supp. 3d 10, 16 (D.D.C. 2017).  In other words, "federal law applies to a legal controversy arising on federal enclaves" and "a court has jurisdiction over such a claim under § 1331." *Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 749 (9th Cir. 2022).  Exclusive federal jurisdiction remains "unless reserved or authorized by Congress." *Thomas v. Securiguard Inc.*, 412 F. Supp. 3d 62, 74 (D.D.C. 2019) (citing *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 181 (1988)).

---

[5] Defendants must satisfy "all four" requirements under *Grable* to establish federal-question jurisdiction on this theory.  *Gunn*, 568 U.S. at 258.  Because Defendants fail on prong one, the Court need not address the other three.  *See, e.g.*, *Shell Oil*, 35 F.4th at 56.

The question here is whether the Enclave Clause confers federal jurisdiction when some of the pertinent activity occurred on a federal enclave but some did not.[6]  Neither party cites any binding authority on this question, and another court in this District has characterized the law in this area as "not entirely settled."  *Jograj*, 270 F. Supp. 3d at 16; *see City of Roseville v. Norton*, 219 F. Supp. 2d 130, 150 (D.D.C. 2002) ("There is scarce case law interpreting the enclaves clause.").  But several courts of appeals addressing the question in analogous litigation have held that federal enclave jurisdiction requires "that *all* pertinent events take place on a federal enclave." *Suncor*, 25 F.4th at 1271 (cleaned up); *see BP P.L.C.*, 31 F.4th at 217–19; *Shell Oil*, 35 F.4th at 58; *see also Cnty. of San Mateo*, 32 F.4th at 750 (finding that connection between alleged conduct and federal enclaves "too attenuated and remote" to establish subject-matter jurisdiction).  Consistent with this principle, the Supreme Court has held that Indian reservations are federal enclaves only with respect to conduct that happened wholly within the reservation.  *See Nevada v. Hicks*, 533 U.S. 353, 361–62, 365 (1990) (holding that jurisdiction under Enclaves Clause only lies for "on-reservation conduct involving only Indians" and that "State sovereignty does not end at a reservation's border").  Courts in this District have similarly considered the question of federal-enclave jurisdiction only when the relevant conduct or injury occurred entirely within a purported federal enclave.  *See, e.g.*, *Youssef*, 2021 WL 3722742, at *11.

---

[6] Defendants do not appear to argue that federal-enclave jurisdiction lies because the *entire* District of Columbia itself is a federal enclave.  *See Youssef v. Embassy of the United Arab Emirates*, No. 17-cv-2638 (KBJ), 2021 WL 3722742, at * 11 (D.D.C. Aug. 23, 2021) (The "District of Columbia is neither a state nor a territory, but a federal enclave itself." (cleaned up)).  And there does not appear to be any support for such a view.  Although the District of Columbia is a federal creation, Congress effectively delegated governance to local authorities through the Home Rule Act of 1973.  *See United States v. Simmons*, No. 18-cr-344 (EGS), 2022 WL 1302888, at *2 (D.D.C. May 2, 2022).  Thus, unlike in the case of a state and a federal enclave within its boundaries, in general, "the federal enclave doctrine does not apply to limit the applicability of D.C. laws with respect to entities located in the District." *See Youssef*, 2021 WL 3722742, at * 11.

That is not the case here.  The District alleges that Defendants' false advertising affected consumers across the District of Columbia.  *See, e.g.*, ECF No. 1-14 at 29.  It also alleges that the resulting injures—a cascade of environmental harms—occurred throughout the District of Columbia.  *See* ECF No. 1-14 at 11–12.  Again, Defendants seem to concede that the District's allegations pertain to activity across the District of Columbia, even if some of that activity happened in a federal enclave.  And Defendants do not argue that anything especially significant happened in a federal enclave that did not occur elsewhere.  Thus, as several other courts have in similar circumstances, this Court declines to find that federal enclave jurisdiction is appropriate.

### D.      Removal is Improper Under the Outer Continental Shelf Lands Act

Defendants contend that the Court has jurisdiction over the District's claims under the Outer Continental Shelf Lands Act ("OCSLA").  OCSLA provides original jurisdiction for "cases and controversies arising out of, or in connection with . . . any operation conducted on the outer Continental shelf."  43 U.S.C. § 1349(b).  They argue that the District's claims arise in connection with their offshore drilling operations, which are "operations" under OCSLA, and because the District's false advertising allegations "necessarily sweep[ ] in Defendants' activities on" the outer continental shelf.  ECF No. 51 at 67.  The District says that Defendants' interpretation of OCSLA is too broad.  It contends that Defendants' false advertising, which caused the injury, is not an "operation" under OCSLA, and that any offshore drilling was not the "but for" cause of the District's injury.  ECF No. 63 at 26.  The District has the better argument.

The D.C. Circuit has not interpreted the limits of OCSLA's jurisdictional grant.  Thus, the parties—and other courts addressing the question—have turned to the Fifth Circuit for guidance.  To establish jurisdiction under OCSLA, a party must show that "(1) the activities that caused the injury constituted an 'operation' 'conducted on the outer Continental Shelf' that involved the exploration and production of minerals, and (2) the case 'arises out of, or in connection with' the

operation." *In re Deepwater Horizon*, 745 F.3d 157, 163 (5th Cir. 2014).  In defining the second requirement, the Fifth Circuit requires an operation on the outer Continental Shelf to be the "but-for" cause of the plaintiff's injuries.  *See In re Deepwater Horizon*, 745 F.3d at 163; *see also BP P.L.C.*, 31 F.4th at 220; *Suncor*, 25 F.4th at 1272–75; *but see Cnty. of San Mateo*, 32 F.4th at 754 (declining to require "but-for" causation).  And although § 1349(b)(1) is a "broad" jurisdictional provision, *Texaco Expl. & Prod., Inc. v. AmClyde Engineered Prods. Co.*, 448 F.3d 760, 768 (5th Cir. 2006), a "mere connection" between operations on the outer Continental Shelf and a plaintiff's injury will not establish jurisdiction if the connection is "too remote," *In re Deepwater Horizon*, 745 F.3d at 163.

Defendants' alleged false advertising and misleading information campaigns are not "operation[s]" under OCSLA, even if those acts somehow relate to their offshore drilling.  *See EP Operating Ltd. P'ship v. Placid Oil Co.*, 26 F.3d 563, 567 (5th Cir. 1994) ("The term 'operation' contemplate[s] the doing of some physical act on the [outer Continental Shelf].").  Nor have Defendants shown that their activity on the outer Continental Shelf was the "but-for" cause of the District's claims.  Defendants' allegedly misleading newspaper advertisements, biased scientific studies, and misstatements about green energy gave rise to the District's suit, and are independent of any of Defendants' technical operations on the outer Continental Shelf.  Put another way, "irrespective of Defendants' activities on the [outer Continental Shelf]," the District's "injuries still exist as a result of that distinct marketing conduct."  *BP P.L.C.*, 31 F.4th at 221.[7]  Unlike cases

---

[7] Defendants' argument for removal under OCSLA would fail even under the Ninth Circuit's minority approach, which does not require "but-for" causation.  In *San Mateo*, that court held that any connection between the alleged injuries and the outer Continental Shelf was "too attenuated," because the plaintiffs' alleged injuries were "exclusively within their local jurisdictions" and none of the alleged wrongdoing occurred on the outer Continental Shelf.  *San Mateo*, 32 F.4th at 754–55.

involving "direct connections" to activity on the outer Continental Shelf, such as "collision, death, personal injury, loss of wildlife, [or] toxic exposure," the District's suit does not present a "nexus" between its injuries and offshore operations.  *Suncor*, 25 F.4th at 1273 (citing *Barker v. Hercules Offshore, Inc.*, 713 F.3d 208, 213 (5th Cir. 2013)).

Defendants argue that, in the end, the District's suit targets their extensive operations on the outer Continental Shelf.  But the First, Third, Fourth, Ninth, and Tenth circuits have all rejected the argument that such a remote connection can establish jurisdiction under OCSLA.  *See Shell Oil*, 35 F.4th at 59–60; *City of Hoboken*, 45 F.4th at 712; *BP P.L.C.*, 31 F.4th at 219–22; *Cnty. of San Mateo*, 32 F.4th at 751–54; *Suncor*, 25 F.4th at 1272–75.  They have done so for good reason: Adopting Defendants' approach would allow essentially any lawsuit related to fossil fuels to be removed under OCSLA.  *See Shell Oil*, 35 F.4th at 60.  The Court agrees that even though section 1349(b)'s jurisdictional grant is broad, removal under the provision is inappropriate because the District's false advertising allegations under the Act "bear a weak relationship" to any activity on the outer Continental Shelf.  *BP P.L.C.*, 31 F.4th at 222.

### E.   The Federal Officer Removal Statute Does Not Apply

Defendants argue that removal is appropriate under the federal officer removal statute. This law allows removal of a civil action against "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof."  28 U.S.C. § 1442(a)(1).[8]  This statute operates as an exception to the well-pleaded complaint rule. *See Mesa v. California*, 489 U.S. 121, 136 (1989).  To remove under the federal-officer removal statute, Defendants must show that they were "acting under" the direction of the federal govern-ment, that there is a "nexus" or "causal connection" between the asserted federal authority and the

---

[8] The District does not contest that Defendants are each a "person" for purposes for § 1442.

conduct at issue, and that they can allege a "colorable" federal defense to the District's claims.  *See*

*Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999); *Kormendi/Gardner Partners v. Surplus Ac-*

*quisition Venture, LLC*, 606 F. Supp. 2d 114, 119 (D.D.C. 2009).  The District does not challenge

Defendants' ability to satisfy the third requirement.

As for the first requirement, Defendants argue that through various contracts and agree-

ments, "the federal government directed Defendants to engage in activities related to" the District's

claims, and that Defendants have "acted under the direction" of the federal government when de-

veloping fossil fuel products.  ECF No. 51 at 51–52.  As for the second, they say the District's

claims are sufficiently "connected or associated" with the fossil fuel activity they undertook at the

behest of the federal government.  *Id.* at 52.

Not so.  Even if Defendants acted under the federal government's direction "for decades,"

as they say, ECF No. 51 at 65, Defendants have failed to show "a nexus" or "causal connection"

between "the charged conduct and the asserted official authority."  *K&D LLC v. Trump Old Post*

*Office, LLC*, 951 F.3d 503, 507 (D.C. Cir. 2020) (quoting *Acker*, 527 U.S. at 431).[9]  The "charged

conduct" here is Defendants' false advertising—not fossil fuel production en masse.  Put another

way, the agreements between Defendants and the federal government do not require the alleged

false advertising and misleading representations that gave rise to the District's claims.  *See, e.g.*,

*Shell Oil*, 35 F.4th at 53 n.6 (holding that federal-officer removal statute did not apply because the

defendants' contracts with the federal government "mandate[d] none of those activities").  True,

the injuries the District's alleges—in short, climate change—eventually trace back to fossil fuel

---

[9] The Court expresses no view on whether Defendants' activities related to the development of
fossil fuel products qualify as actions taken "under the direction" of the federal government.  The
Court notes, however, that the Fourth and Tenth Circuits found that similar activity fell short of
that requirement.  *See BP P.L.C.*, 31 F.4th at 230–32; *Suncor*, 25 F.4th at 1250–54.

usage.  But "the source of tort liability," according to the District, is not Defendants' production

of fossil fuels but the "concealment and misrepresentation of the products' known dangers."  *BP*

*P.L.C.*, 31 F.4th at 233.

Thus, the Court cannot find that there is a sufficient nexus between any action Defendants

may have taken under federal direction and the alleged false advertising that gave rise to the Dis-

trict's claims.  Removal under § 1442 is therefore unavailable to Defendants.

### F.    The Court Does Not Have Diversity Jurisdiction Over the Parties

Defendants contend that removal is proper because complete diversity exists between the

parties.  They say that the parties are diverse because the Court should consider the citizenship of

the District's citizens, who are the real parties in interest.  The District argues that it sued on its

own behalf to protect sovereign interests distinct from the private interests of any individual citi-

zen.  Again, the District has the better argument.

The diversity statute requires complete diversity, so all plaintiffs must be diverse from all

defendants in a lawsuit.  28 U.S.C. § 1332(a); *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005).

Ordinarily, the "District of Columbia, like a state, is not a citizen of a state (or of itself) for diversity

purposes."  *Barwood, Inc. v. District of Columbia*, 202 F.3d 290, 292 (D.C. Cir. 2000).  But when

a state is "merely a nominal party" rather than the true party in interest, diversity jurisdiction may

exist.  *Hood v. F. Hoffman-La Roche, Ltd.*, 639 F. Supp. 2d 25, 33 (D.D.C. 2009); *see also Navarro*

*Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980) ("A federal court must disregard nominal or formal

parties and rest jurisdiction only upon the citizenship of real parties to the controversy.").

Both parties agree that to establish more than a "nominal interest," the District must show

a "quasi-sovereign interest" and allege an injury "to a sufficiently substantial segment of its pop-

ulation" rather than a discrete injury to a "group of individual residents."  *Alfred L. Snapp & Son,*

*Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 607 (1982).  The Act itself makes clear that the

District has a "quasi-sovereign interest" in prosecuting consumer protection violations.[10]   To

begin, it authorizes the District to sue "in the public interest" generally, not on behalf of individual

or discrete groups of citizens.  D.C. Code § 28-3909(a).  The Act also distinguishes between suits

brought by the District and those brought by private citizens.  For example, the District may seek

civil penalties paid to the District's treasury, while private citizens may seek only ordinary dam-

ages.  *Compare* D.C. Code § 28-3903(b) *with* D.C. Code § 28-3905(k)(2).  The District may also

seek an injunction for violations of the Act without proving damages, which a private citizen may

not do.  *Compare* D.C. Code § 28-3909(a) *with* D.C. Code § 28-3905(k)(2)(D).  Nor does the Act

impose a statute of limitations on claims that the District may bring, but it does require a private

citizen to bring similar claims within three years.  *Compare* D.C. Code § 28-3909 *with* D.C. Code

§ 28-3905(d)(1).  These distinctions make clear that the District has its own "pecuniary interest in

this lawsuit" distinct from the private financial interests of individual citizens.  *District of Colum-*

*bia ex rel. Am. Combustion, Inc. v. Transamerica Ins. Co.*, 797 F.2d 1041, 1047 (D.C. Cir. 1986).

Put another way, the District seeks redress of its own injuries and may recover for violations of

the Act apart from any recovery individual citizens seek.  *Cf. id.* (finding no "pecuniary interest"

where state government sued but damages were awarded to private individuals).

There is also little doubt that the District's alleged injuries affect both the District itself and

a "sufficiently substantial segment of its population."  *Id.*  Alleged rising sea levels, destruction of

property, and other consequences of climate change fit that bill.  For their part, Defendants argue

---

[10] Other courts have recognized a state's sovereign interest in preventing false advertising and unfair trade practices in similar circumstances. *See, e.g.*, *Nessel ex rel. Michigan v. AmeriGas Partners*, 954 F.3d 831, 835 (6th Cir. 2020) ("The Attorney General brings this lawsuit in order to vindicate the State's sovereign and quasi-sovereign interest in deterring Defendants from engaging in unfair trade practices . . . ."); *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 670 (9th Cir. 2012) (holding that a state "has a specific, concrete interest in eliminating any deceptive practices that may have contributed to" a housing crisis).

that the District sued on behalf of a discrete group of citizens, but they do not make clear what that group is and why that group has been injured while other citizens have not.

Defendants have failed to establish that the District is merely a "nominal party" and that the Court should consider its citizens as the real parties in interest.  Because the District is not diverse from Defendants, the Court therefore lacks diversity jurisdiction under § 1332.

### G.    The Class Action Fairness Act Does Not Apply

Defendants argue that they may remove the case because it satisfies the requirements of the Class Action Fairness Act ("CAFA").   They essentially argue that the District's suit is a class action, and the citizens of the District are the class.  *See* ECF No. 51 at 72.  They also say that because the District seeks "restitution and damages" for violating the Act, the District is effectively representing a class of private citizens rather than its own interests.

"CAFA provides the federal district courts with 'original jurisdiction' to hear a 'class action' if the class has more than 100 members, the parties are minimally diverse, and the 'matter in controversy exceeds the sum or value of $5,000,000.'"  *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) (quoting 28 U.S.C. § 1332(d)).  Defendants' arguments fall short at the first requirement:  They cannot show that this is a "class action."  For reasons already discussed, the District has a sovereign interest in prosecuting consumer protection claims and may sue under the Act on its own behalf.  The Act says nothing about the District suing on behalf of "class" or initiating a "class action."  Defendants' attempt to recast the District's suit as a class action is therefore unpersuasive, even if the suit were brought "in the public interest" generally.  D.C. Code § 28-3909(a).

Other courts in this District have reached the same conclusion in a similar context.  Along with suits brought by the District, the Act allows individuals to bring "private attorney general suits" where "[a] person, whether acting for the interests of itself, its members, or the general

public" may "seek[ ] relief from the use by any person of a trade practice in violation of a law of the District of Columbia." *See* D.C. Code § 28–3905(k)(1). Courts have held that such a suit is not a class action under CAFA because it is "authorized by District of Columbia statute and is a separate and distinct procedural vehicle from a class action." *See Breakman v. AOL LLC*, 545 F. Supp. 2d 96, 101 (D.D.C. 2008); *see also Stein v. Am. Exp. Travel Related Servs.*, 813 F. Supp. 2d 69, 73 (D.D.C. 2011) (citing *Breakman* and collecting cases). The same reasoning applies with even more force to suits brought by the District, given its sovereign interest in preventing consumer protection violations.

The cases Defendants rely on are unpersuasive. One does not relate to CAFA jurisdiction at all. *See Song v. Charter Commc'ns Inc.*, No. 17-cv-325 (JLB), 2017 WL 1149286 (S.D. Cal. Mar. 28, 2017). The other is a District of Columbia case involving a suit under the Act, but the court had no occasion to determine whether a federal court would have jurisdiction under CAFA. *See Rotunda v. Marriott Int'l, Inc.*, 123 A.3d 980, 989 (D.C. 2015). Nor did that suit involve a government-initiated enforcement suit. *See id.* At bottom, Defendants cite no authority—and the Court is aware of none—supporting the proposition that the District's consumer protection suit constitutes a "class action" under CAFA.

## IV. Conclusion

For all the above reasons, the Court will grant the District's motion to remand. A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: November 12, 2022