## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| DISTRICT OF COLUMBIA<br><br>        Plaintiff,<br><br>  v.<br><br>EXXON MOBIL CORP., *et al.*<br><br>        Defendants. | Civil Action No. 1:20-cv-1932-TJK |

## <u>PLAINTIFF DISTRICT OF COLUMBIA'S OPPOSITION TO DEFENDANTS' MOTION TO STAY REMAND PENDING APPEAL</u>

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

LEGAL STANDARD...................................................................................................... 2

ARGUMENT ................................................................................................................... 4

    A.    Defendants Cannot Show Irreparable Harm ............................................. 4

    B.    Defendants Are Not Likely to Succeed on the Merits of Their Appeal.................. 8

            1.    Contrary to Defendants' claim, a serious legal question or matter of first impression is not enough to meet the required likelihood of success factor under D.C. law.................................................................... 9

            2.    Circuit courts are unanimous against Defendants' position on removal, and Defendants cannot manufacture a circuit split where there is none... 11

            3.    Defendants' pending petitions for certiorari and the Supreme Court's request for the views of the Solicitor General does not demonstrate a likelihood of success on the merits of Defendants' appeal...................... 13

            4.    None of Defendants' other bases for removal jurisdiction support a stay ......................................................................................................... 16

    C.    A Stay Would Substantially Prejudice the District and Its Residents and Contravene the Public Interest ............................................................................. 19

CONCLUSION.............................................................................................................. 21

# TABLE OF AUTHORITIES

**Cases**

*ACandS, Inc. v. Godwin*,
340 Md. 334 (1995) ........................................................................................ 20

*Akishev v. Kapustin*,
23 F. Supp. 3d 440 (D.N.J. 2014) .................................................................. 6

*Alabama Ass'n of Realtors v. U.S. Dep't of Health & Human Servs.*,
No. 21-5093, 2021 WL 2221646 (D.C. Cir. June 2, 2021) ........................ 3

*Am. Meat Inst. v. U.S. Dep't of Agric.*,
968 F. Supp. 2d 38 (D.D.C. 2013) ................................................................ 4

*Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*,
25 F.4th 1238 (10th Cir. 2022) ........................................... 11, 12, 17, 18

*Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*,
405 F. Supp. 3d 947 (D. Colo. 2019) ........................................................... 14

*Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*,
423 F. Supp. 3d 1066 (D. Colo. 2019) ......................................................... 6

*Browning v. Navarro*,
743 F.2d 1069 (5th Cir. 1984) ...................................................................... 20

*Chaplaincy of Full Gospel Churches v. England*,
454 F.3d 290 (D.C. Cir. 2006) ...................................................................... 4

*Chavous v. District of Columbia Fin. Responsibility and Mgmt. Assistance*,
201 F.R.D. 1 (D.D.C. 2001) ........................................................................... 19

*Citibank, N.A. v. Jackson*,
No. 3:16-CV-712-GCM, 2017 WL 4511348 (W.D.N.C. Oct. 10, 2017) ....... 6

*Citizens for Responsibility & Ethics in Washington ("CREW") v. Fed. Election Comm'n*,
904 F.3d 1014 (D.C. Cir. 2018) .................................................................... 8

*City & Cnty. of Honolulu v. Sunoco LP, et al.*,
No. 20-163-DKW-RT, 2021 WL 531237 (D. Haw. Feb. 12, 2021) ............. 14

*City & Cnty. of Honolulu v. Sunoco LP, et al.*,
No. 20-163-DKW-RT, 2021 WL 839439 (D. Haw. Mar. 5, 2021) ............... 9

*City & Cnty. of Honolulu v. Sunoco LP, et al.*,
No. 21-15313, 2021 WL 1017392 (9th Cir. Mar. 13, 2021) ................... 5, 7

*City of Annapolis, Maryland v. BP P.L.C.*,
No. CV SAG-21-00772, 2022 WL 4548226 (D. Md. Sept. 29, 2022) ......... 14

*City of Hoboken v. Chevron Corp., et al.*,
45 F.4th 699 (3d Cir. 2022) .................................................................... 11, 12

*City of Hoboken v. Chevron Corp., et al.*,
No. 21-2728, Doc. 146 (3d Cir. Oct. 12, 2022) ............................... 2, 8, 13

*City of Hoboken v. Exxon Mobil Corp.*,
558 F. Supp. 3d 191 (D.N.J. 2021) ............................................................... 14

*City of New York v. Chevron Corp.*,
993 F.3d 81 (2d Cir. 2021) ...................................................................... 11, 12

*City of Oakland v. BP PLC*,
   969 F.3d 895 (9th Cir. 2020) ................................................................ 14

*Cnty. of San Mateo v. Chevron Corp.*,
   294 F. Supp. 3d 934 (N.D. Cal. 2018) ................................................... 14

*Cnty. of San Mateo v. Chevron Corp.*,
   32 F.4th 733 (9th Cir. 2022) ........................................................... 11, 18

*Conkright v. Frommert*,
   556 U.S. 1401 (2009) ........................................................................... 14

*Connecticut v. Exxon Mobil Corp.*,
   No. 3:20-CV-1555 (JCH), 2021 WL 2389739 (D. Conn. June 2, 2021) ............... 14

*Davis v. Pension Ben. Guar. Corp.*,
   571 F.3d 1288 (D.C. Cir. 2009) ............................................................... 3

*de Csepel v. Hungary*,
   Civ. No.10-1261 (JDB), 2022 WL 3026998 (D.D.C. Aug. 1, 2022) .................... 15

*Delaware v. BP Am. Inc.*,
   578 F. Supp. 3d 618 (D. Del. 2022) ...................................................... 14

*Dine Citizens Against Ruining Our Env't v. Jewell*,
   839 F.3d 1276 (10th Cir. 2016) ............................................................ 10

*Fox Television Stations, Inc. v. FilmOn X, LLC*,
   968 F. Supp. 2d 134 (D.D.C. 2013) ......................................................... 3

*Friendship Edison Pub. Charter Sch. Collegiate Campus v. Nesbitt*,
   704 F. Supp. 2d 50 (D.D.C. 2010) ............................................... 9, 10, 12

*FTC v. Boehringer Ingelheim Pharms., Inc.*,
   241 F. Supp. 3d 91 (D.D.C. 2017) ........................................................... 2

*FTC v. Church & Dwight Co., Inc.*,
   756 F. Supp. 2d 81 (D.D.C. 2010) ....................................................... 4, 7

*Golden Gate Restaurant Association v. City and County of San Francisco*,
   512 F.3d 1112 (9th Cir. 2008) ............................................................. 5, 6

*Helmerich & Payne Int'l Drilling Co. v. Bolivarian Repub. of Venezuela*,
   185 F. Supp. 3d 233 (D.D.C. 2016) ....................................................... 20

*Holland v. High Power Energy*,
   248 B.R. 53 (S.D.W. Va. 2000) ............................................................. 20

*In re Hardy*, No. 16-00280,
   2017 WL 2644693 (Bankr. D.D.C. June 19, 2017) ...................................... 7

*In re Navy Chaplaincy*,
   738 F.3d 425 (D.C. Cir. 2013) ............................................................... 3

*In re Salas*,
   No. 18-cv-2318 (KBJ), 2019 WL 2870132 (D.D.C. July 3, 2019) .................... 7

*In re Special Proceedings*,
   840 F. Supp. 2d 370 (D.D.C. 2012) ...................................................... 10

*In re Verizon Internet Servs.*,
   257 F. Supp. 2d 244 (D.D.C. 2003) ......................................................... 9

*K&D LLC v. Trump Old Post Office, LLC*,
　951 F.3d 503 (D.C. Cir. 2020) ............................................................................................. 17

*Mallinckrodt Ard LLC v. Verma*,
　No. 19-cv-1471 (TFH), 2020 WL 7265325 (D.D.C. May 29, 2020) ...................................... 3

*Massachusetts v. Exxon Mobil Corp.*,
　462 F. Supp. 3d 31 (D. Mass. 2020) .................................................................................... 14

*Mayor & City Council of Baltimore v. BP P.L.C.*,
　31 F.4th 178 (4th Cir. 2022) .................................................................................... 11, 12, 18

*Mayor & City Council of Baltimore v. BP P.L.C.*,
　388 F. Supp. 3d 538 (D. Md. 2019) ...................................................................................... 14

*Mayor & City Council of Baltimore v. BP P.L.C.*,
　No. ELH-18-2357, 2019 WL 3464667 (D. Md. July 31, 2019) ...................................... 6, 7, 21

*Mdewakanton Sioux Indians of Minnesota v. Zinke*,
　255 F. Supp. 3d 48 (D.D.C. 2017) .......................................................................................... 5

*Minnesota v. Am. Petroleum Inst.*,
　No. CV 20-1636 (JRT/HB), 2021 WL 1215656 (D. Minn. Mar. 31, 2021) ............................ 14

*Nara v. Frank*,
　494 F.3d 1132 (3d Cir. 2007) ............................................................................................... 19

*Nat'l Ass'n of Mfrs. v. NLRB*,
　No. 11-1629 (ABJ), 2012 WL 1929889 (D.D.C. Mar. 7, 2012) .............................................. 4

*Nat'l Fuel Gas Supply Corp. v. 138 Acres of Land in Vill. of Springville, Cnty. of Erie, N.Y.*,
　186 F. Supp. 2d 339 (W.D.N.Y. 2001) .................................................................................... 6

*New York Times Co. v. Def. Health Agency*,
　No. 21-CV-566 (BAH), 2021 WL 1614817 (D.D.C. Apr. 25, 2021) ........................................ 3

*Nken v. Holder*,
　556 U.S. 418 (2009) ................................................................................................... 2, 3, 4, 9

*Northrop Grumman Technical Services, Inc. v. DynCorp Int'l LLC*,
　No. 16CV534, 2016 WL 3346349 (E.D. Va. June 16, 2016) ........................................... 20, 21

*Pac. Tech Constr., Inc. v. Sauer, Inc.*,
　No. 3:18-CV-170-J-34JRK, 2018 WL 4501738 (M.D. Fla. Sept. 20, 2018) ......................... 20

*Powerex Corp. v. Reliant Energy Servs., Inc.*,
　551 U.S. 224 (2007) .............................................................................................................. 19

*Pueblo of Pojoaque v. State*,
　233 F. Supp. 3d 1021 (D.N.M. 2017) ................................................................................... 10

*Raskas v. Johnson & Johnson*,
　No. 4:12 CV 2174 JCH, 2013 WL 1818133 (E.D. Mo. Apr. 29, 2013) ................................... 6

*Renegotiation Bd. v. Bannercraft Clothing Co.*,
　415 U.S. 1 (1974) .................................................................................................................... 5

*Rhode Island v. Chevron Corp.*,
　393 F. Supp. 3d 142 (D.R.I. 2019) ....................................................................................... 14

*Rhode Island v. Shell Oil Prod. Co.*,
　No. 19-1818, 2022 WL 1617206 (1st Cir. May 23, 2022) .................................................... 18

*Rhode Island v. Shell Oil Prods. Co.*,
   35 F.4th 44 (1st Cir. 2022) ............................................................................ 11, 12

*Rivera-Zayas v. Our Lady of Consolation Geriatric Care Ctr.*,
   No. 20CV5153NGGJMW, 2021 WL 4776610 (E.D.N.Y. Oct. 13, 2021) .............................. 6

*Sampson v. Murray*,
   415 U.S. 61 (1974) ............................................................................................. 4

*Shawnee Tribe v. Mnuchin*,
   984 F.3d 94 (D.C. Cir. 2021) ............................................................................... 19

*Shays v. Fed. Election Comm'n*,
   340 F. Supp. 2d 39 (D.D.C. 2004) ......................................................................... 19

*Stanley v. Babu*,
   No. GJH-19-489, 2021 WL 878356 (D. Md. Mar. 9, 2021) ............................................ 7

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
   572 U.S. 1301 (2014) ......................................................................................... 15

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
   574 U.S. 318 (2015) ........................................................................................... 15

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
   723 F.3d 1363 (Fed. Cir. 2013) ............................................................................ 15

*Thorpe v. District of Columbia*,
   306 F.R.D. 6 (D.D.C. 2014) .................................................................................. 19

*United States v. Fourteen Various Firearms*,
   897 F. Supp. 271 (E.D. Va. 1995) ........................................................................... 8

*United States v. Philip Morris USA, Inc.*,
   449 F. Supp. 2d 988 (D.D.C. 2006) ......................................................................... 2

*Watson v. Philip Morris Co.*,
   551 U.S. 142 (2007) ........................................................................................... 16

**Statutes**

28 U.S.C. § 1442(a)(1) ........................................................................................... 16

**Other Authorities**

D.C. Superior Court, *Case Management Plan* 5,
   https://www.dccourts.gov/sites/default/files/divisionspdfs/CivilDivisionCaseManagementPlan
   -CivilActionsBranchFinalJune2016.pdf (last accessed Dec. 4, 2022) .................................. 7

David R. Stras, *The Supreme Court's Gatekeepers: The Role of Law Clerks in the Certiorari
   Process*, 85 Tex. L. Rev. 947 (2007) ..................................................................... 13

Harvard Law Review, Supreme Court Statistics,
   https://harvardlawreview.org/supreme-court-statistics/ (last visited Dec. 4, 2022) ................ 13

U.S. Supreme Court, Public Information Office, *A Reporter's Guide to Applications Pending
   Before The Supreme Court of the United States* 15 (Sept. 2022 revision),
   https://www.supremecourt.gov/publicinfo/reportersguide.pdf ............................................ 13

United States Courts, *Table N/A—U.S. Courts of Appeals Federal Court Management Statistics*
   2 (June 30, 2022),
   https://www.uscourts.gov/sites/default/files/fcms_na_appsummary0630.2022_0.pdf ................. 8

In its November 12, 2022 Order, this Court properly remanded Plaintiff's Complaint to state court, rejecting each of Defendants' seven theories for federal jurisdiction. *See* Dkt. 118 ("Remand Order"). Despite this Court holding removal improper and unwarranted, Defendants now seek to further delay returning this case to D.C. Superior Court, where it belongs, by asking the Court for a stay pending appeal of the Remand Order.

There is no basis to grant the extraordinary remedy of a stay, because Defendants cannot meet any of the four factors necessary to obtain one. They will not suffer irreparable harm absent a stay; they have not shown a strong likelihood of success on the merits of their appeal; and the interests of both the District and the public weigh heavily against a stay. Their motion should thus be denied.

## INTRODUCTION

This case was filed over two years ago and is one of approximately twenty similar cases pending against Defendants and other fossil fuel companies, all of which pursue state law claims for relief based on allegations that Defendants misled the public for decades concerning climate change and their products' primary role in causing it. Every court that has considered the issue has concluded—as this Court did—that these cases do not raise federal questions and are not otherwise removable, and thus should remain in state court. Although Defendants paint a picture of unified orders staying related cases based on pending appeals, the reality is that Defendants are in fact already litigating in various state courts, including Massachusetts, Rhode Island, Maryland, and Hawaii, and they will soon be litigating in Delaware and New Jersey given the Third Circuit's recent denial of their motion to stay pending their certiorari petition to the Supreme Court, a decision Defendants wholly ignore. *See City of Hoboken v. Chevron Corp., et al.*, No. 21-2728,

Doc. 146 (3d Cir. Oct. 12, 2022) (denying motion to stay). Contrary to Defendants' claim, state court litigation does not equate to irreparable harm, which is fatal to their request for a stay.

Nor can Defendants show a strong (or any) likelihood of success on the merits of their appeal, which is the standard under D.C. law. Defendants claim there are "serious" legal questions of first impression that they believe should lead to reversal; but that is not the applicable legal standard and, in any event, all courts to have ultimately decided the issue have held, just as this Court did, that there is no basis for federal jurisdiction here. Defendants' attempt to manufacture a circuit split where there is none is unavailing, and their speculation about the meaning of the Supreme Court's request for the Solicitor General to weigh in on their petition for certiorari is just that: speculation based on a series of hopeful assumptions and what-ifs that cannot justify the extraordinary remedy of a stay.

Finally, the harm to the District and the public interest in further delaying this case, which has already been on hold for over two years, counsels strongly against a stay. Any claimed interest in judicial economy or Defendants' desire to avoid limited dual-track litigation is outweighed by the District's right to seek civil justice on behalf of its residents. Moreover, the harm caused by Defendants' deceptive conduct—and the deceptive conduct itself—is ongoing. Thus, justice delayed will be justice denied for the public.

## LEGAL STANDARD

As the Supreme Court has made clear, "[a] stay is not a matter of right." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (cleaned up). Rather, "granting a stay pending appeal is always an extraordinary remedy" and "the moving party carries a heavy burden to demonstrate that the stay is warranted." *FTC v. Boehringer Ingelheim Pharms., Inc.*, 241 F. Supp. 3d 91, 97 (D.D.C. 2017); *see also United States v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 988, 990 (D.D.C. 2006). Courts

in the District of Columbia consider four factors in assessing whether to grant an applicant's motion for a stay pending appeal: (1) whether the stay applicant has made a strong showing that it is likely to succeed on the merits of the appeal; (2) whether the appellant will be irreparably harmed absent a stay; (3) whether the issuance of a stay would substantially injure other interested parties; and (4) whether the public interest favors or disfavors a stay. *Alabama Ass'n of Realtors v. U.S. Dep't of Health & Human Servs.*, No. 21-5093, 2021 WL 2221646, at \*1 (D.C. Cir. June 2, 2021).

Defendants urge the Court to employ a "sliding scale approach" that requires balancing the probability of success on appeal with the other three factors. But that is not the law, which requires the movant to establish *all four* factors to obtain a stay. In *Nken*, the Supreme Court decided that a standard nearly identical to the traditional four-part test used to determine whether to issue a preliminary injunction should also be applied to determine whether to issue a stay pending appeal. *Nken*, 556 U.S. at 434; *see also Mallinckrodt Ard LLC v. Verma*, No. 19-cv-1471 (TFH), 2020 WL 7265325, at \*5 (D.D.C. May 29, 2020) (explaining "the same legal standards apply to stays pending appeal and injunctions"); *Fox Television Stations, Inc. v. FilmOn X, LLC*, 968 F. Supp. 2d 134, 138 (D.D.C. 2013) (same). Although some courts in this District have continued to apply the sliding-scale standard after *Nken* and its progeny, these decisions are mistaken.[1] Indeed, in his concurrence in *Nken*, Justice Kennedy stated the well-observed requirement that a movant satisfy

---

[1] As Justice (then Judge) Kavanaugh has observed: "In light of the Supreme Court's recent decisions, . . . the old sliding-scale approach to preliminary injunctions—under which a very strong likelihood of success could make up for a failure to show a likelihood of irreparable harm, or vice versa—is no longer controlling, or even viable." *Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1296 (D.C. Cir. 2009) (Kavanaugh, J., concurring) (internal quotation marks omitted); *see also In re Navy Chaplaincy*, 738 F.3d 425, 428 (D.C. Cir. 2013) (requiring proof that all four prongs of the traditional standard were met to justify granting injunctive relief); *accord New York Times Co. v. Def. Health Agency*, No. 21-CV-566 (BAH), 2021 WL 1614817, at \*3 n.5 (D.D.C. Apr. 25, 2021). Although the D.C. Circuit has not yet conclusively addressed this question, that is the correct analysis: the extraordinary remedy should only be provided if a movant satisfies all factors.

all four factors to obtain a stay. *Id.* at 438 (Kennedy, J., concurring) ("When considering success on the merits and irreparable harm, courts cannot dispense with the required showing of one simply because there is a strong likelihood of the other.") (collecting cases). The sliding scale standard does not survive this more recent precedent.

In any event, and under either standard, Defendants have failed to make the difficult showing required to obtain a stay pending appeal, because all four factors weigh against a stay here. Thus, regardless of how this Court rules on the sliding scale approach, Defendants' Motion to Stay must be denied.

## **ARGUMENT**

### A.    **Defendants Cannot Show Irreparable Harm.**

As a threshold matter, Defendants have not and cannot demonstrate irreparable harm, which is a necessary condition for a stay. Even if this Court adopts the sliding scale approach, "[a] showing of irreparable harm is crucial" and cannot be dispensed with. *FTC v. Church & Dwight Co., Inc.*, 756 F. Supp. 2d 81, 87 (D.D.C. 2010); *Nat'l Ass'n of Mfrs. v. NLRB*, No. 11-1629 (ABJ), 2012 WL 1929889, at *1 (D.D.C. Mar. 7, 2012) ("[T]he movant's failure to make any showing of irreparable harm is grounds for refusing to grant a stay, even if the other three factors merit relief."). Moreover, the movant must show that the prospect of irreparable harm is at least probable, not merely possible. *Nken*, 556 U.S. at 434–35. The D.C. Circuit "has set a high standard for irreparable injury." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). Thus, "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough." *Sampson v. Murray*, 415 U.S. 61, 90 (1974) (citation omitted); *Am. Meat Inst. v. U.S. Dep't of Agric.*, 968 F. Supp. 2d 38, 75 (D.D.C. 2013)

(quoting *Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958)).

Defendants' motion should be denied on this ground alone, as Defendants do not identify any substantive right that will be affected or non-speculative injury that they will suffer if motions to dismiss and early discovery proceed in D.C. Superior Court. Defendants complain that if they are forced to litigate in D.C. Superior Court they "are unlikely to recover much (if any) of their discovery costs." Mot. at 16. But "it is well established that litigation expenses are not an irreparable injury." *Mdewakanton Sioux Indians of Minnesota v. Zinke*, 255 F. Supp. 3d 48, 52 (D.D.C. 2017); *see also Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974) ("Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury."); *City & Cnty. of Honolulu v. Sunoco LP*, No. 21-15313, 2021 WL 1017392, at *1 (9th Cir. Mar. 13, 2021) (denying stay in related climate-deception case because "increased litigation burdens . . . do not rise to the level of irreparable harm").

The out-of-district, non-precedential cases to which Defendants cite in support of irreparable harm, *see* Mot. at 17, are distinguishable outliers that do not reflect the state of the law in this Circuit or District. In *Golden Gate Restaurant Association v. City and County of San Francisco*, 512 F.3d 1112 (9th Cir. 2008), the Ninth Circuit did not, as Defendants claim, "consider[]" litigation costs in the "irreparable harm analysis." *See* Mot. at 17. Rather, the court mentioned in passing—in its balancing of the equities, not in discussing irreparable harm—that the movant would "incur some otherwise avoidable financial costs if a stay is denied." *Golden Gate Restaurant Ass'n*, 512 F.3d at 1125. It thus simply considered litigation costs in its analysis of the competing interests in the case. The irreparable harm was clear: the Ninth Circuit found that it was "clear that otherwise avoidable human suffering, illness, and possibly death will result if a

5

stay is denied" because individuals with serious health conditions would not get medical coverage in the absence of a stay. *Id.* In *Citibank, N.A. v. Jackson*, the court found that a class action defendant would suffer irreparable harm because the "costs of improper discovery requests" likely could not be shifted due to the plaintiff's modest financial means. No. 3:16-CV-712-GCM, 2017 WL 4511348, at *2 (W.D.N.C. Oct. 10, 2017). That is not the case here. More importantly, *Jackson* and the sole other out-of-circuit case cited by Defendants (*Raskas v. Johnson & Johnson*, No. 4:12 CV 2174 JCH, 2013 WL 1818133 (E.D. Mo. Apr. 29, 2013)) are outliers when compared to the overpowering weight of authority holding that litigation costs do not constitute irreparable harm.

Defendants' objection to having to litigate in different forums is furthermore a red herring given that they are already doing so in numerous other similar cases that are proceeding in various state courts across the country. Indeed, "[p]arallel litigation, in and of itself, is not unusual in American jurisprudence." *Nat'l Fuel Gas Supply Corp. v. 138 Acres of Land in Vill. of Springville, Cnty. of Erie, N.Y.*, 186 F. Supp. 2d 339, 343 (W.D.N.Y. 2001); *see also Rivera-Zayas v. Our Lady of Consolation Geriatric Care Ctr.*, No. 20CV5153NGGJMW, 2021 WL 4776610, at *4 (E.D.N.Y. Oct. 13, 2021) ("Nor do the costs of parallel litigation constitute irreparable harm."); *Akishev v. Kapustin*, 23 F. Supp. 3d 440, 447 (D.N.J. 2014) ("[T]he mere existence of concurrent litigation is not, without more, sufficiently onerous to establish clear hardship or inequity for Defendants.") (internal quotations omitted). If anything, "the interim proceedings in state court may well advance resolution of the case in federal court." *Mayor & City Council of Baltimore v. BP P.L.C.*, No. ELH-18-2357, 2019 WL 3464667, at *6 (D. Md. July 31, 2019); *accord Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 423 F. Supp. 3d 1066, 1074 (D. Colo. 2019). Defendants' unsupported speculation otherwise, including that this Court may want or need to revisit substantive or procedural court orders issued

between remand and a second removal, does not meet their heavy burden of demonstrating irreparable harm.

In a similar vein, Defendants argue that their right to appeal will be hollow "if the municipal court undertakes to issue rulings on the merits." Mot. at 15. But "[a] majority of courts have held that a risk of mootness, standing alone, does not constitute irreparable harm." *In re Salas*, No. 18-cv-2318 (KBJ), 2019 WL 2870132, at *3 (D.D.C. July 3, 2019); *In re Hardy*, No. 16-00280, 2017 WL 2644693, at *7 (Bankr. D.D.C. June 19, 2017) ("[I]t is well settled that an appeal being rendered moot does not itself constitute irreparable harm.") (internal quotation marks and citation omitted). "For harm to be 'irreparable'—that is, for legal remedies after the fact to be inadequate to restore the party seeking a stay if the stay is not granted—the injury must be both certain and great." *Church & Dwight Co., Inc.*, 756 F. Supp. 2d at 87.

Courts across the country have thus rejected this line of argument for good reason: Absent a stay, Defendants' appeal "would only be rendered moot in the unlikely event that a final judgment is reached in state court before the resolution of their appeal," which merely amounts to "speculative harm [that] does not constitute an irreparable injury." *Baltimore*, 2019 WL 3464667, at *5.[2] Here, the prospect of a final judgment occurring before Defendants' appeal is resolved is highly unlikely. *E.g.*, *compare* D.C. Superior Court, *Case Management Plan* 5, https://www.dccourts.gov/sites/default/files/divisionspdfs/CivilDivisionCaseManagementPlan-CivilActionsBranchFinalJune2016.pdf (last accessed Dec. 4, 2022) (setting the performance

---

[2] *Accord Stanley v. Babu*, No. GJH-19-489, 2021 WL 878356, at *6 (D. Md. Mar. 9, 2021); *see also City & Cnty. of Honolulu v. Sunoco LP*, Nos. 21-15313, 21-15318, 2021 WL 1017392, at *1 (9th Cir. Mar. 13, 2021) ("[T]he theoretical possibility that the state court could irrevocably adjudicate the parties' claims and defenses while these appeals are pending also falls short of meeting the demanding irreparable harm standard."); *Boulder*, 423 F. Supp. 3d at 1074 (rejecting arguments that defendants might lose their appeal rights as "simply too speculative to rise to the level of irreparable injury" (internal quotation marks and citations omitted)).

standard to resolve a complex "Civil I" case on the merits at 36 months and less complex "Civil II" cases at 24 months) *with* United States Courts, *Table N/A—U.S. Courts of Appeals Federal Court Management Statistics* 2 (June 30, 2022), https://www.uscourts.gov/sites/default/files/fcms _na_appsumary0630.2022_0.pdf (median time in D.C. Circuit from notice of appeal to case disposition was 11.6 months for period ending June 30, 2022). Although Defendants cite at length the reasoning of the Districts of Delaware and New Jersey in support of this argument, the Third Circuit disagreed, denying Defendants' motion to stay pending Supreme Court review, a decision Defendants fail to mention. *See City of Hoboken*, No. 21-2728, Doc. 146 (3d Cir. Oct. 12, 2022).

In sum, because Defendants fail to point to any cognizable harm absent a stay, this Court must deny their request.

**B.      Defendants Are Not Likely to Succeed on the Merits of Their Appeal.**

Even if Defendants could show irreparable harm—they cannot—Defendants also advance a losing argument in attacking this Court's well-reasoned remand decision, which is consistent with all other courts that have decided the same question. A party seeking a stay pending appeal must demonstrate "there is a *strong likelihood* that the issues presented on appeal could be rationally resolved in favor of the party seeking the stay." *United States v. Fourteen Various Firearms*, 897 F. Supp. 271, 273 (E.D. Va. 1995) (emphasis added). The D.C. Circuit has further explained that a movant's failure to satisfy the stringent standard for demonstrating a likelihood of success on the merits is "an arguably fatal flaw for a stay application." *Citizens for Responsibility & Ethics in Washington ("CREW") v. Fed. Election Comm'n*, 904 F.3d 1014, 1019 (D.C. Cir. 2018) (per curiam).

Defendants cannot show a strong likelihood of success in their appeal here because their arguments have failed everywhere. In asserting otherwise, Defendants rehash arguments that the

parties briefed and this Court already rejected in its Remand Order. And identical jurisdictional arguments have been rejected by a dozen district courts and five courts of appeal in materially similar cases, as this Court is aware. The District does not restate all the reasons this Court was correct in finding Defendants' bases for removal without merit.

Defendants' other likelihood of success arguments hinge on an incorrect legal standard, a manufactured circuit split where there is none, and a dubious series of hopeful assumptions and what-ifs. *See City & Cnty. of Honolulu v. Sunoco LP*, No. 20-163-DKW-RT, 2021 WL 839439, at *2 (D. Haw. Mar. 5, 2021) ("Defendants' remaining assertions for why they enjoy a likelihood of success on the merits depend, as Plaintiffs explain, on multiple contingencies" and would require them to "knock down multiple litigation pins."). Because assumptions and speculation cannot support a strong likelihood of success, Defendants also fail to establish this critical factor.

1.  Contrary to Defendants' claim, a serious legal question or matter of first impression is not enough to meet the required likelihood of success factor under D.C. law.

As a threshold matter, "[i]t is not enough that the chance of success on the merits be better than negligible." *Nken*, 556 U.S. at 434 (internal quotation marks omitted). Rather, the movant must "establish a *strong* likelihood of success." *Friendship Edison Pub. Charter Sch. Collegiate Campus v. Nesbitt*, 704 F. Supp. 2d 50, 53 (D.D.C. 2010) (emphasis added).

Perhaps in recognition that Defendants cannot meet the applicable standard to support the extraordinary remedy of a stay, they ask this Court to adopt a lower bar for showing a likelihood of success. Specifically, Defendants argue that a serious legal issue or matter of first impression alone is sufficient to justify a stay. It is not. *See, e.g.*, *In re Verizon Internet Servs.*, 257 F. Supp. 2d 244, 268 (D.D.C. 2003) ("Although there may be a temptation to conclude that a stay is warranted in this 'test' case to enable the Court of Appeals to consider issues arguably of first impression, [movant] in fact has a heavy burden to justify an entitlement to this 'extraordinary

remedy.'"), *reversed on other grounds*, *Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.*, 351 F.3d 1229 (D.C. Cir. 2003).

Virtually every non-frivolous appeal arguably raises "serious" legal questions, many of which are matters of first impression in the relevant circuit. But that does not mean all cases should be stayed pending resolution on appeal. "[I]f any showing of likelihood of success would tip the scales on the other factors in favor of granting the stay, then courts would always stay their judgments pending appeal. There is, after all, always some possibility of a successful appeal. But, stays of judgments are extraordinary remedies that interfere with the orderly and normal administration of justice." *Friendship Edison*, 704 F. Supp. at 53. A stay pending appeal is an *extraordinary* measure that is not warranted here. Adopting Defendants' proposed standard for granting a stay pending appeal would turn the law on its head.

Even those courts in this District that still incorrectly follow the "sliding scale" approach hold that the showing of likelihood of success on the merits is only somewhat relaxed in rare circumstances when a serious legal issue is raised and *the other three factors are decisively in favor of a stay. E.g.*, *In re Special Proceedings*, 840 F. Supp. 2d 370, 371 (D.D.C. 2012).[3] Defendants thus cannot satisfy the likelihood-of-success requirement under any standard. They fail to satisfy any other factor supporting a stay, and the circuit courts are unanimous against

---

[3] For the reasons previously discussed in the Legal Standard section, because the "sliding scale" approach is no longer good law, no exceptions allow the likelihood-of-success standard to be relaxed. *See Dine Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1282 (10th Cir. 2016) (rejecting relaxed likelihood-of-success standard in certain cases because, "[u]nder *Winter*'s rationale, any modified test which relaxes one of the prongs for preliminary relief and thus deviates from the standard test is impermissible"); *Pueblo of Pojoaque v. State*, 233 F. Supp. 3d 1021, 1093 (D.N.M. 2017) (explaining why "abrogation of the relaxed likelihood-of-success test in the injunction context likely applies with equal force to the stay-pending-appeal context").

Defendants' removal position, leaving Defendants without any real likelihood that they will ultimately prevail.

2.   <u>Circuit courts are unanimous against Defendants' position on removal, and Defendants cannot manufacture a circuit split where there is none.</u>

Defendants cannot cite a single decision to support their claim that they will prevail on removal on appeal. Although the D.C. Circuit has not yet weighed in on this particular case, every other circuit court to consider the issue has held that removal jurisdiction does not exist in similar climate deception cases. *See Mayor & City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178, 199–208 (4th Cir. 2022); *Rhode Island v. Shell Oil Prods. Co.*, 35 F.4th 44, 53–56 (1st Cir. 2022); *City of Hoboken v. Chevron Corp., et al.*, 45 F.4th 699, 707–13 (3d Cir. 2022); *Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 746–48 (9th Cir. 2022); *Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc*., 25 F.4th 1238, 1257–61 (10th Cir. 2022).

Despite every other appellate court having held (as this Court did) that there is no basis for removal of similar climate deception cases, Defendants nevertheless claim that there is a "very real possibility" that the Supreme Court will grant certiorari and reverse this unanimous weight of authority. Mot. at 2. In apparent recognition that Supreme Court review is ***highly*** unlikely in the absence of a circuit split, Defendants seek to manufacture one. But there is no circuit split on any of the questions this Court considered, and the unanimous decisions of the circuits are entirely consistent with this Court's holding and Supreme Court precedent.

Defendants argue that this Court's opinion—and the consistent decisions of other courts, including the First, Fourth, Ninth, and Tenth Circuits—conflicts with *City of New York v. Chevron Corp.*, 993 F.3d 81 (2d Cir. 2021). Mot. at 5–6. But this Court has already held that *City of New York* "has limited relevance here" because it was "brought in federal court, so removal was not at issue" and the case "involved an ordinary preemption defense at the motion to dismiss stage,"

which the Second Circuit made clear it was analyzing "on its own terms, not under the heightened standard unique to the removability inquiry." Remand Order at 6. Defendants' assertion that *City of New York* conflicts with this Court's holding (and the consistent decisions of all other courts) contradicts the Second Circuit's own acknowledgement that the "fleet of cases" rejecting removal jurisdiction on similar facts "does not conflict with our holding." *City of New York*, 993 F.3d at 94.

Likewise, as did this Court, the Fourth Circuit considered and correctly distinguished *City of New York* on the basis of its "completely different procedural posture." *Baltimore*, 31 F.4th at 202–03. Every other circuit to consider the question has reached the same conclusion. *See City of Hoboken*, 45 F.4th at 708 ("But [*City of New York*] involved another ordinary-preemption defense to a case first filed in federal court."); *Rhode Island*, 35 F.4th at 55 ("*City of New York*, after all, is distinguishable in at least one key respect. There, unlike here, the government 'filed suit in *federal court* in the *first instance*[.]'"); *Boulder*, 25 F.4th at 1262 ("[T]he issues before the district court and the circuit [in *City of New York*] were not within the context of removal.").

Consequently, none of the relevant removal decisions conflict with *City of New York*, and Defendants' assertion to the contrary contradicts the Second Circuit's plain language in that case and this Court's holding.[4] Attempting to manufacture a circuit split where there is none, Defendants again mischaracterize this case as a "suit over global greenhouse gas emissions," which Defendants claim "must be brought under federal law." Mot. at 1. But this Court already

---

[4] Defendants cite *Minnesota by Ellison v. American Petroleum Institute* for the proposition that this case presents a "serious legal question," but this is a weak reed. *Minnesota* found that even a charitable reading of *City of New York* only "slightly increase[d] the likelihood that Defendants will prevail on their efforts to keep this, and similar actions, in federal court." *Id.* As explained above, a party seeking a stay pending appeal in this Circuit requires more than a showing of a *slight* possibility of success on appeal; it must show a *strong* possibility. *Nesbitt*, 704 F. Supp. 2d at 53.

correctly held that "[t]he 'charged conduct' here is Defendants' false advertising—not fossil fuel production en masse." Remand Order at 16. As all courts to have considered the issue have ultimately held, such state law claims do not give rise to federal jurisdiction.

> 3.      Defendants' pending petitions for certiorari and the Supreme Court's request for the views of the Solicitor General does not demonstrate a likelihood of success on the merits of Defendants' appeal.

Nor does the mere fact that Defendants have filed petitions for certiorari in other climate deception cases mean that the Supreme Court is poised to overturn these unanimous decisions. The Third Circuit thus recently rejected this very argument in denying motions to stay two climate deception cases. *See City of Hoboken*, No. 21-2728, Doc. 146 (3d Cir. Oct. 12, 2022) (order denying motions to stay mandates). This Court should as well.

As a matter of pure statistics, the odds are simply not in Defendants' favor, nor are the merits, as this Court has already held. The Supreme Court "receives approximately 7,000–8,000 petitions for a writ of certiorari each Term,"[5] and it denies 99% of such petitions.[6] Of the tiny fraction the Supreme Court accepts, cases like this one that do not involve circuit splits are granted less than one-third of the 1% of the time the Supreme Court grants certiorari overall.[7] Even given the request for the views of the Solicitor General in *Boulder*, the Supreme Court itself has said that

---

[5] U.S. Supreme Court, Public Information Office, *A Reporter's Guide to Applications Pending Before The Supreme Court of the United States* 15 (Sept. 2022 revision), https://www.supremecourt.gov/publicinfo/reportersguide.pdf.

[6] *See* Harvard Law Review, Supreme Court Statistics, https://harvardlawreview.org/supreme-court-statistics/ (last visited Dec. 4, 2022) (reporting certiorari grant rates of 1.4% in 2020 term, 1.0% in 2019 term, 1.3% in 2018 term, 1.3% in 2017 term, and 1.2% in 2016 term) (disposition statistics may be found by clicking the links for each term under "SUPREME COURT STATISTICS — PRINT (PDF) COPIES).

[7] David R. Stras, *The Supreme Court's Gatekeepers: The Role of Law Clerks in the Certiorari Process*, 85 Tex. L. Rev. 947, 983-84 n.41 (2007) (finding that 31.3% of cases from 1993-1995 and 30.2% from 2003-05 in which the Supreme Court granted certiorari did not involve circuit splits).

such a request is "hardly dispositive" of a petitioner's likelihood of success, with "the Court den[ying] certiorari in such cases more often than not." *Conkright v. Frommert*, 556 U.S. 1401, 1403 (2009) (Ginsburg, J., in chambers) (denying stay of mandate pending petition for certiorari). And although Defendants assume that the Solicitor General will recommend granting certiorari review in *Boulder* based on past *amicus* briefs filed in other cases, the United States has never taken a position on the certworthiness of Defendants' novel federal-common-law theory of removal, which has been unanimously rejected by five circuits and numerous district courts, including this Court. *See* Remand Order at 3–9.[8] Thus, not only is the likelihood of success on the merits nonexistent given the unanimity of the courts, but the Solicitor General also has ample reason to take a fresh look at the issue.

Moreover, even if the Supreme Court were to grant Defendants' petition for certiorari, "the extraordinary relief" of a stay would still be inappropriate here because Defendants cannot demonstrate irreparable harm. *See Conkright*, 556 U.S. at 1403 ("Relief is not warranted unless the other factors [including irreparable harm] also counsel in favor of a stay. The Court's invitation

---

[8] *See also Mayor & City Council of Baltimore v. BP P.L.C.*, 388 F. Supp. 3d 538 (D. Md. 2019), *aff'd*, 31 F.4th 178 (4th Cir. 2022); *Delaware v. BP Am. Inc.*, 578 F. Supp. 3d 618 (D. Del. 2022), *aff'd sub nom. City of Hoboken v. Chevron Corp.*, 45 F.4th 699 (3d Cir. 2022); *City of Hoboken v. Exxon Mobil Corp.*, 558 F. Supp. 3d 191 (D.N.J. 2021), *aff'd sub nom. City of Hoboken v. Chevron Corp.*, 45 F.4th 699 (3d Cir. 2022); *Bd. of Cnty. Comm'rs of Boulder Cnty. v. Suncor Energy (U.S.A.) Inc.*, 405 F. Supp. 3d 947 (D. Colo. 2019), *aff'd*, 25 F.4th 1238 (10th Cir. 2022); *Rhode Island v. Chevron Corp.*, 393 F. Supp. 3d 142 (D.R.I. 2019), *aff'd sub nom. Rhode Island v. Shell Oil Prods. Co.*, 35 F.4th 44 (1st Cir. 2022); *City & Cnty. of Honolulu v. Sunoco LP*, No. 20-CV-00163-DKW-RT, 2021 WL 531237 (D. Haw. Feb. 12, 2021), *aff'd*, 39 F.4th 1101 (9th Cir. 2022); *Cnty. of San Mateo v. Chevron Corp.*, 294 F. Supp. 3d 934 (N.D. Cal. 2018), *aff'd*, 32 F.4th 733 (9th Cir. 2022); *City of Oakland v. BP PLC*, 969 F.3d 895 (9th Cir. 2020), *cert. denied sub nom. Chevron Corp. v. City of Oakland*, 141 S. Ct. 2776 (2021); *Minnesota v. Am. Petroleum Inst.*, No. CV 20-1636 (JRT/HB), 2021 WL 1215656 (D. Minn. Mar. 31, 2021), *appeal filed*, No. 21-1752 (8th Cir. Apr. 5, 2021); *Connecticut v. Exxon Mobil Corp.*, No. 3:20-CV-1555 (JCH), 2021 WL 2389739 (D. Conn. June 2, 2021), *appeal filed*, No. 21-1446 (2d Cir. June 8, 2021); *Massachusetts v. Exxon Mobil Corp.*, 462 F. Supp. 3d 31 (D. Mass. 2020); *City of Annapolis, Maryland v. BP P.L.C.*, No. CV SAG-21-00772, 2022 WL 4548226 (D. Md. Sept. 29, 2022).

to the Solicitor General does not lead me to depart from my previous assessment of those factors.");
*de Csepel v. Hungary*, Civ. No.10-1261 (JDB), 2022 WL 3026998, at *3, 5 (D.D.C. Aug. 1, 2022)
(similar). Chief Justice Roberts' order denying a stay in *Teva Pharmaceuticals USA, Inc. v.
Sandoz, Inc.*, 572 U.S. 1301 (2014), is instructive.

The applicant there, Teva Pharmaceuticals, sought certiorari review of a patent decision,
and applied to the Supreme Court to recall and stay the Federal Circuit's mandate. *See generally
Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 723 F.3d 1363 (Fed. Cir. 2013). Chief Justice Roberts,
acting as Circuit Justice, noted that the Court had granted Teva's certiorari petition two weeks
prior and then held that Teva had "shown a fair prospect of success on the merits," the less
demanding standard a petitioner must show to stay a circuit court's mandate pending a petition for
certiorari. 572 U.S. at 1301. Indeed, the Court ultimately sided with Teva and vacated the Federal
Circuit's decision. *See generally Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318 (2015).
Nonetheless, Chief Justice Roberts denied a stay of the mandate while the Court considered the
merits, because he was "not convinced" that that Teva "ha[d] shown likelihood of irreparable harm
from denial of a stay." 572 U.S. at 1301. The Chief Justice held that "should Teva prevail in this
Court and its patent be held valid, Teva will be able to recover damages from respondents for past
patent infringement," and "[g]iven the availability of that remedy, the extraordinary relief that
Teva seeks is unwarranted." *Id.* at 1301–02.

The same straightforward analysis from *Teva* applies here. Whether or not Defendants will
successfully petition for certiorari, and whether or not they will eventually prevail in the Supreme
Court on the merits, is irrelevant because they will not suffer irreparable harm absent a stay. The
Court's consideration should end there.

4.      None of Defendants' other bases for removal jurisdiction support a stay.

Defendants half-heartedly repeat a series of arguments concerning other bases for federal jurisdiction in addition to their federal-common-law theory. None of them are any more persuasive today than they were when this Court rejected them as grounds for removal. Mot. 12–14. Because this Court and numerous others have comprehensively rejected these arguments in well-reasoned opinions, they are dispensed with briefly here.

*Grable jurisdiction.* Defendants assert only that they have a "reasonable probability" of succeeding on their argument that *Grable* jurisdiction is appropriate in this case—they do not even claim a strong likelihood of success on this issue. Mot. 12. In any event, *Grable* jurisdiction is clearly unwarranted here. As this Court observed, "[c]ourts exercising *Grable* jurisdiction identify a precise federal issue and explain why that issue is necessary to resolve the state law claim." Remand Order at 9. This cannot be done here. Defendants do not even try to identify any precise federal issue evident on the face of the complaint here; they instead argue nebulously that the case presents unspecified "substantial federal issues." Mot. at 12. This is simply not enough to establish *Grable* jurisdiction, and no decision of the D.C. Circuit, the Supreme Court, or any other federal circuit court suggests otherwise.

*Federal officer removal statute*. Defendants' argument that removal is warranted under the federal officer removal statute, Mot. at 13, also presents no meaningful chance of success on appeal. To remove a case under that statute, a private defendant must show that it "acted under" a federal officer. 28 U.S.C. § 1442(a)(1). In cases involving a private entity, the "acting under" relationship requires that there at least be some exertion of "subjection, guidance, or control" on the part of the federal government, and that "'acting under' must involve an effort to assist, or to help carry out, the duties or tasks of the federal superior." *Watson v. Philip Morris Co.*, 551 U.S. 142, 150, 152 (2007). Assuming such control was present, there still must be "a nexus" or "causal

connection" between "the charged conduct and the asserted official authority." *K&D LLC v. Trump Old Post Office, LLC*, 951 F.3d 503, 507 (D.C. Cir. 2020) (internal quotation marks omitted).

Defendants' argument for federal-question jurisdiction is doomed here because, as this Court already observed, "[t]he 'charged conduct' here is Defendants' false advertising—not fossil fuel production en masse." Remand Order at 16. Put another way, no agreements Defendants rely on with the federal government require the alleged false advertising and misleading representations that gave rise to the District's claims. Defendants do not explain why this Court's conclusion is incorrect or point to any cognizable reason why the D.C. Circuit might disagree on appeal.

***OCSLA jurisdiction***. Defendants' argument that the Outer Continental Shelf Lands Act ("OCSLA") creates federal jurisdiction over actions like this one (Mot. 13–14) has been roundly rejected time and again. Just because the D.C. Circuit has not addressed this issue does not mean that Defendants are likely to succeed on its merits. Defendants' OCSLA removal arguments have failed everywhere because the challenged conduct in this case does not present a sufficiently close nexus with Defendants' operations on the Outer Continental Shelf ("OCS"). *See*, *e.g.*, *Boulder*, 25 F.4th at 1273–74 (claims that trigger OCSLA jurisdiction "feature either claims with a direct physical connection to an OCS operation (collision, death, personal injury, loss of wildlife, toxic exposure) or a contract or property dispute directly related to an OCS operation," not claims like this where "the relationship between Exxon's OCS operations and the Municipalities' claims is removed several steps beyond that"). As this Court already observed, "the First, Third, Fourth, Ninth, and Tenth circuits have all rejected the argument that such a remote connection can establish jurisdiction under OCSLA." Remand Order at 15 (collecting cases).

***Federal enclave jurisdiction***. Defendants argue that "the propriety of federal enclave jurisdiction also presents a serious legal question" because they engage in some fossil fuel

production on federal property. Mot. 14. But no federal circuit court has held that enclave jurisdiction exists merely because some of the alleged harmful conduct occurred on federal property, especially when the *harm* occurred elsewhere. *See Baltimore*, 31 F.4th at 217–18 ("[F]ederal-question jurisdiction is not conferred merely because some of Defendants' activities occurred on military installations. We decline to endorse Defendants' overreaching approach to federal-question jurisdiction premised on federal enclaves."); *Boulder*, 25 F.4th at 1271–72 (explaining that enclave jurisdiction "generally requires that *all* pertinent events take place on a federal enclave" and separately holding that enclave jurisdiction was inapplicable where "the Municipalities expressly disclaimed any damages or abatement relief for injuries to or occurring on federal lands" and "sought relief for only the negative impacts within their respective jurisdictions") (cleaned up) (emphasis in original). As this Court explained, "several other courts" have declined to find that federal enclave jurisdiction is appropriate in similar circumstances, Remand Order at 13, and Defendants fail to identify a single case credibly indicating the D.C. Circuit might rule otherwise.

As with Defendants' losing federal common law argument for federal jurisdiction, Defendants' other bases for federal jurisdiction—all of which this Court properly rejected—have likewise been rejected in materially similar cases before the First, Third, Fourth, Ninth, and Tenth Circuits. *See id.*; *Rhode Island v. Shell Oil Prod. Co.*, No. 19-1818, 2022 WL 1617206 (1st Cir. May 23, 2022) (affirming order granting remand); *Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733 (9th Cir. 2022) (same); *Boulder*, 25 F.4th 1238 (10th Cir. 2022) (same). The unanimity of these decisions, as well as this Court's well-reasoned Remand Order, demonstrates that there are no real legal questions in dispute, much less any real likelihood of Defendants obtaining a reversal of this or another court's remand decision.

**C.      A Stay Would Substantially Prejudice the District and Its Residents and Contravene the Public Interest.**

As Defendants recognize, the District's interest *is* the public interest and the last two factors—harm to the District and the public interest—thus merge. *Shawnee Tribe v. Mnuchin*, 984 F.3d 94, 102 (D.C. Cir. 2021) (quoting *Nken*, 556 U.S. at 435). Both factors weigh sharply against a stay. And although Defendants fail to satisfy their burden of showing irreparable harm and likely success on the merits, even "[i]n a close case," which this is not, "the *movant* should make a showing that, on balance, the interests of the parties and the public favor a stay." *Nara v. Frank*, 494 F.3d 1132, 1133 (3d Cir. 2007) (emphasis added). Defendants cannot make such a showing here.

Further delay in the District's prosecution of this case would undermine "Congress's longstanding policy of not permitting interruption of the merits of a removed case by prolonged litigation of questions of jurisdiction." *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 238 (2007). Defendants nevertheless argue that the District will not be harmed by a stay, and will actually benefit, because it too will save litigation resources. Mot. at 18. But in light of Defendants' ongoing deception of District residents and the elderly age of witnesses involved in Defendants' decades-long climate deception campaigns, the potential prejudice to the District's case from loss of evidence is concrete and severe, and both the District and the public have a strong vested interest in allowing this case to proceed to the merits without added delay. *See, e.g.*, *Thorpe v. District of Columbia*, 306 F.R.D. 6, 11 (D.D.C. 2014) (finding plaintiffs "demonstrated a risk of harm that offsets that faced by defendants" where stay would delay litigation); *Shays v. Fed. Election Comm'n*, 340 F. Supp. 2d 39, 54 (D.D.C. 2004) (delay would "further deepen the injury to public interest"); *Chavous v. District of Columbia Fin. Responsibility and Mgmt. Assistance*, 201 F.R.D. 1, 3 (D.D.C. 2001) (the court must take into account "the harm produced by a delay in discovery"

when considering stay). In short, justice delayed is justice denied. *Helmerich & Payne Int'l Drilling Co. v. Bolivarian Repub. of Venezuela,* 185 F. Supp. 3d 233, 250 (D.D.C. 2016) (denying stay where "fairness to Plaintiffs and the public interest counsel in favor of no further delays"); *cf.*, *ACandS, Inc. v. Godwin*, 340 Md. 334, 422 (1995), *on reconsideration* (Dec. 1, 1995) (while court efficiency procedures have changed over time, "the maxim has remained constant that, ordinarily, DELAY FAVORS THE DEFENDANT") (emphasis in original).

Defendants' purported concern with unburdening D.C. Superior Court from "potentially unnecessary litigation," cannot outweigh the District's and public's right to speedy resolution of their claims. *See Pac. Tech Constr., Inc. v. Sauer, Inc.*, No. 3:18-CV-170-J-34JRK, 2018 WL 4501738, at *5 (M.D. Fla. Sept. 20, 2018) ("[T]he Court's interest in judicial economy does not outweigh the potential prejudice Plaintiff could suffer if deprived of an opportunity to conduct discovery."); *Holland v. High Power Energy*, 248 B.R. 53, 59 (S.D.W. Va. 2000) ("The Trustees have a legitimate interest in the prompt resolution of their claim against Pratt. The risk that judicial resources may be sacrificed does not outweigh the hardship to the Trustees in having to defer proceedings against Pratt until the bankruptcy proceedings of High Power and Geupel are resolved."). If they so choose, Defendants may seek a stay of the litigation following remand to state court, which is eminently capable of managing its own resources. But the public interest does not support Defendants' continued interference with state court proceedings. *See Browning v. Navarro*, 743 F.2d 1069, 1078 n.26 (5th Cir. 1984) (denying motion to stay remand pending appeal "out of respect for the state court and in recognition of principles of comity").[9]

---

[9] Defendants misguidedly rely on *Northrop Grumman Technical Services, Inc. v. DynCorp Int'l LLC*, No. 16CV534, 2016 WL 3346349, at *4 (E.D. Va. June 16, 2016). Mot. at 4. But there, the district court emphasized that the defendants' federal officer issues raised "novel" issues of "first impression," including "complex questions and novel legal theories which the Fourth Circuit has

Finally, staying this lawsuit would further delay the relief that the District needed yesterday to combat Defendants' decades-long deceptive advertising campaigns—all for the slim probability that Defendants will see some success on the merits on appeal. Every day of delay also gives Defendants more time to inundate consumers and the public with their climate disinformation campaigns, including by "greenwashing" their brands, which artificially inflates the market for fossil-fuel products and exacerbates the local climate harms facing the District. *See Compl.* at ¶¶ 98–169. Thus, time is of the essence. *See Baltimore*, 2019 WL 3464667, at *6 (rejecting argument that a stay would not prejudice Baltimore because "a stay pending appeal would further delay litigation on the merits of the City's claims," which "favors denial of a stay, particularly given the seriousness of the City's allegations and the amount of damages at stake").

## CONCLUSION

Defendants are not entitled to a stay, and there is no basis for this Court to grant one given the strong public interest that weighs against further delay here and the fact that Defendants will not be irreparably harmed by the case proceeding in D.C. Superior Court, as other similar cases are proceeding in state courts across the country. Moreover, the merits are not in Defendants favor. Indeed, the only reason Defendants have the ability to appeal this Court's remand order is because they asserted federal officer jurisdiction, which this Court roundly rejected as a basis for removal. Remand Order at 15–16. This Court likewise rejected the other six bases for removal Defendants concocted, and rightly so. Federal jurisdiction cannot be manufactured here, and a stay would only serve to unnecessarily delay this case further.

---

yet to evaluate." *Northrop Grumman Tech. Servs., Inc.,* 2016 WL 3346349, at *3. Moreover, the state court had scheduled trial a mere five weeks after the stay order. *Id*. at *4. Here, by contrast, every court that has considered Defendants' bases for removal has rejected them. Additionally, there are no trial dates or even any scheduling order entered in either this Court or the state court.

The Court should thus deny Defendants' Stay Motion; deny their request for a temporary stay to enable them to seek a stay from the D.C. Circuit; and transmit the District's case to D.C. Superior Court, where it was filed and where this Court properly held it belongs.

Respectfully Submitted,

Dated: December 12, 2022

**KARL A. RACINE**
**Attorney General for the District of Columbia**

By:    */s/  Kathleen Konopka*

KATHLEEN KONOPKA [5531538]
   Deputy Attorney General
   Public Advocacy Division
DAVID S. HOFFMANN [983129]
   Assistant Attorney General
441 4th St., N.W.
Washington, DC 20001
(202) 741-5226
kathleen.konopka@dc.gov
david.hoffmann@dc.gov

By:    */s/ Hassan A. Zavareei*

HASSAN A. ZAVAREEI [456161]
ANNA C. HAAC [979449]
KRISTEN G. SIMPLICIO [977556]
**TYCKO & ZAVAREEI, LLP**
2000 Pennsylvania Avenue NW, Suite 1010
Washington, DC 20006
(202) 973-0900
hzavareei@tzlegal.com
ahaac@tzlegal.com
ksimplicio@tzlegal.com

VICTOR M. SHER (*pro hac vice*)
MATTHEW K. EDLING [1020217]
KATIE H. JONES (*pro hac vice*)
QUENTIN C. KARPILOW [1659323]
**SHER EDLING LLP**
100 Montgomery St., Ste. 1410
San Francisco, CA 94104
(628) 231-2500
vic@sheredling.com
matt@sheredling.com
katie@sheredling.com
quentin@sheredling.com

*Attorneys for the District of Columbia*